167 N.J. Super. 256 (1979)
400 A.2d 823
WILLIAM A. BRANDENBURG, PLAINTIFF-APPELLANT,
v.
BARBARA BRANDENBURG, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1979.
Decided April 3, 1979.
*258 Before Judges LORA, MICHELS and LARNER.
Mr. Donald R. Conway argued the cause for plaintiff-appellant.
*259 Mr. James C. Orr argued the cause for defendant-respondent (Messrs. Lum, Biunno & Tompkins, attorneys; Ms. Claire T. Barile on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff husband appeals from several aspects of the order for equitable distribution entered in conjunction with a judgment of divorce in favor of both parties pursuant to N.J.S.A. 2A:34-2(d) and 2A:34-7. One facet of plaintiff's appeal asserts error in the inclusion in the assets available for distribution of his stock interest in a business acquired after the separation of husband and wife. The other contentions are focused upon the propriety of the valuation of certain marital assets for the purpose of equitable distribution.

I
A brief review of the undisputed facts dealing with the marital relationship is essential for the consideration of the eligibility of the stock interest as property subject to equitable distribution.
The parties were married in 1944 and two children were born of the marriage. Sometime in 1965 or 1966 they separated pursuant to a mutual understanding. The husband moved to an apartment in Hawthorne, New Jersey, located in the building where his business was conducted, and the wife remained in the marital home in Montclair with their two daughters. In 1974 the Montclair home was sold and a condominium was purchased for the wife and children in Clifton with funds derived from the sale of the Montclair property and a $15,000 loan made by the husband. Title was taken in the wife's name alone.
They continued to live separate and apart from each other since 1966 and did not cohabit as husband and wife up to the time of trial  a period of approximately ten years. The husband continued nevertheless to support his wife and *260 children and returned to the marital home from time to time to visit with his children. On a few occasions when the daughters were home for holidays he would stay overnight, and would also attend special parties or other occasions in which the children were involved. The wife did nothing to discourage the continuance of this close relationship between father and daughters.
The husband had started a business known as Norris Manufacturing Company in Hawthorne in the early 1960s. Apparently it prospered until it became involved in a trade secret litigation, as a result of which a substantial judgment was recovered against the company, forcing it to go out of business. The business was then liquidated in late 1965 or early 1966, with most of the assets taken in satisfaction of the judgment. The wife, who held stock in the company in her name, received $37,500 as her share of the liquidation, and two trusts were set up for the children from the same source. Norris Manufacturing Company was dissolved and thus was no longer a viable business enterprise.
Thereafter the husband became employed as general manager for a newly formed company, known as J.B.L. Corporation. Concededly, at that time he had no propriety interest in that company, and there is no suggestion that J.B.L. Corporation was created by funds or other assets of Norris Manufacturing Company. It was truly a new enterprise and not identifiable with or traceable to Norris Manufacturing Company or its assets.
Plaintiff continued as an employee of this company, and commencing in 1969 or 1970 he started to exercise stock options in J.B.L. and purchased shares of stock through the years so that as of the time of the hearing below he held a 59% stock interest in the corporation, having an estimated value of approximately $470,000.
It is this stock interest acquired after the separation which is the subject matter of the controversy on this issue. The trial judge found that the J.B.L. stock is a marital asset subject to equitable distribution because it was acquired by the *261 husband "during the marriage." In including its value in the computation of distribution, he relied upon the literal language of Painter v. Painter, 65 N.J. 196 (1974), which holds that property acquired prior to the filing of the divorce complaint is includable for the purpose of equitable distribution[1]
Subsequent to the decision below the Supreme Court, in Smith v. Smith, 72 N.J. 350 (1977), modified the rule enunciated in Painter. Recognizing that the formulation of Painter was but a pragmatic solution in "an attempt to avoid promulgating an unworkable rule," the court held that the termination date for identification of distributable assets could be determined by the date of a separation agreement, accompanied by a separation in fact.
The key question presented to us is whether the existence of a formal separation agreement is a sine qua non to the application of the modified rule of Smith v. Smith.
In our view the rationale underlying the Smith opinion is that the termination date for the identification of distributable assets is the point of time when it can be said that the marriage is factually dead. Of course, it would be simpler from the viewpoint of judicial economy to utilize a termination date measured by a finite, unequivocal act, such as the filing of the divorce complaint or the execution of a separation agreement. However, in this developing field of equitable *262 distribution law of this State we do not believe that the Supreme Court intended to set down a conclusive mandate as to date of termination and foreclose the rethinking of the application of the rule where the facts of a particular case warranted it.
The court's anticipation of problems arising in different fact patterns is found in the following footnote (n. 7) to the Painter opinion:
We are under no illusion that what we have said above will provide certain and ready answers to all questions which may arise as to whether particular property is eligible for distribution. We have sought only to implement the legislative intent, as we discern it, by setting forth what we believe should be the general governing rules. Individual problems must be solved, as they arise, within the context of particular cases. [65 N.J. at 218]
See also, Smith v. Smith, supra, 72 N.J. at 362.
It would appear that the essence of any rule setting the time frame for identification of marital assets should be determined by a factual complex where there is "incontrovertible evidence that the marital enterprise is no longer viable." Smith v. Smith, supra, 72 N.J. at 361. If that evidence is clear and unequivocal, the inclusion of property thereafter should not depend upon the existence of a formal document designated as a separation agreement. See Ross v. Ross, 151 N.J. Super. 486 (Ch. Div. 1977). Conversely, where the fact of final separation and irretrievable breakdown of the marriage is in doubt and not established by clear and unequivocal evidence, the court of necessity would invoke the rules of Painter and Smith.
Where, as in this case, the parties separated under a mutual oral understanding and did not cohabit for a period of ten years, the marital enterprise is as lacking in viability as it would have been with an accompanying written agreement.[2] Under such circumstances it would be "clearly irrational" *263 to include as distributable assets property acquired by the husband years after such a continuous and final breakdown of the normal marital relationship. See Smith, supra, 72 N.J. at 361.
We do not conceive that the equities dictated by the facts of a particular case should be sacrificed on the altar of vindication of a simplistic and uniform rule. There is no reason why the determination of the appropriate equities in a particular case should not be entrusted to the good judgment of the judiciary. As Justice Mountain aptly stated in Painter, supra:
The judicial task may upon occasion be a difficult one but it will hardly be novel. Seeking just and equitable results is and has always been inherent in the judicial function; it has been a chief concern of the courts for many centuries. [65 N.J. at 212]
The basic concept of the equitable distribution statute of 1971 contemplates that the distribution of marital assets shall be made in a manner which is fair and equitable to both parties. With that controlling principle as the polestar, it is evident that an asset acquired by either husband or wife after an unequivocal separation because of a dead marriage should not be shared as a windfall by the other spouse. Should a member of the marriage partnership be frustrated or discouraged from bettering his or her economic status after a marriage in fact no longer exists for fear of having the fruits of his or her endeavors invaded merely because a divorce proceeding has not been initiated or because the parties have been unable to reach a consensual written agreement? Or is it equitable for a spouse to share in a gift or inheritance received by the other spouse after the marriage is clearly at an end by virtue of the unequivocal act of separation?
From the record herein it is clear that after the separation in 1965 or 1966 defendant did not contribute to the husband's business activities or well-being by any supporting measures which could be construed as causally connected with the *264 creation of the asset involved. She no longer performed the essential function of a wife in the shared enterprise of marriage. As Justice Mountain noted in Smith, supra: "Assets acquired by the joint efforts of the parties while the shared enterprise continues, should be, on its termination, eligible for equitable distribution." 72 N.J. at 361. Since the traditional role of a wife in the marriage relationship through the support of her spouse by her function as homemaker and wife no longer obtained during the years after separation, there is no persuasive equitable reason to allocate to her a share of this after-acquired asset. Cf. Rothman v. Rothman, 65 N.J. 219, 229 (1974).
The lack of this equitable criterion, established as the rationale for the allocation of marital assets to a wife, is a corroborating relevant factor in our determination that the stock interest is not properly subject to distribution. We therefore conclude that the trial judge erred in including the husband's stock interest in J.B.L. Corporation in the property eligible for equitable distribution.

II
Since our determination of the foregoing issue involving the stock interest in J.B.L. Corporation requires a remand, we deem it appropriate to consider the other appellate contentions relating to the valuation of other marital assets.

Clifton Condominium
The evidence is undisputed that the husband borrowed $15,000 in order to provide funds in addition to the proceeds from the sale of the Montclair home for the purchase of the Clifton condominium in 1974. His answers to interrogatories reflect a current balance of $10,500 due to the National Community Bank on that loan. The judge failed to consider the outstanding obligation on this loan in the allocation of assets, apparently because of the wife's certification that there was no existing encumbrance on the condominium. *265 In this respect he was in error. The loan identifiable with the funds necessary to purchase this marital asset, whether secured or unsecured, is properly a credit in favor of the husband to the extent of the remaining balance, as it may be determined by competent evidence.

Normandy Beach Property
A house and lot in Normandy Beach was valued by the trial court at $45,000. Although there was no expert testimony to establish value, and plaintiff testified on a hearsay basis that it was appraised at $72,000, plaintiff's answers to interrogatories estimated the value at $45,000. Under such circumstances we cannot ascribe reversible error to the judge's acceptance of plaintiff's sworn commitment to the lesser value.
The record also reveals that defendant owned individually a lot contiguous to the foregoing property which was purchased in 1950 for the sum of $3,500. There was also evidence in defendant's answers to interrogatories that the lot is assessed for taxation at $12,000. Without other evidence, the trial judge applied a value of $3,500. Such a determination in the face of obvious inflation of land values between 1959 and 1977 is manifestly improper and unjustified by the record. This item should be revalued on the basis of stipulation or competent expert opinion.

Hilton Head Condominium
The judge valued a condominium owned by plaintiff in Hilton Head, South Carolina, at $85,000. This figure was derived solely from defendant's ex parte analysis of plaintiff's assets in her pretrial presentation to the court. Such a basis for a fact-finding of value which is more or less than that suggested by the opposing party is unacceptable. See Esposito v. Esposito, 158 N.J. Super. 285, 290-291 (App. Div. 1978). The judge should insist upon a stipulation or competent testimony as to value before arriving at a conclusion. *266 We further note that the judge erroneously found that the mortgage balance on this property was $43,000, whereas the testimony of plaintiff indicates a mortgage of approximately $52,500.

Failure to credit gift of $37,000 made by husband to wife at time of liquidation of Norris Manufacturing Company in 1965
We perceive of no error in this regard. The trial judge refused to consider this amount or the difference between this sum and the $20,000 gift of stock in 1960 as a credit in favor of the husband. The court's conclusion in this regard is amply supported by the wife's testimony to the effect that the proceeds from the liquidation had been dissipated in living expenses during the years of separation.

Interest in Pension Plan and Profit Sharing Plan in J.B.L. Corporation
Plaintiff's contentions with respect to the treatment of his interest in the pension and profit sharing plans of J.B.L. Corporation are clearly without merit. R. 2:11-3(e) (1) (A).

Order relating to counsel fees and litigation expense for experts
The order entered in connection with the assessment of counsel fees and an expert's fee is well within the discretion of the trial judge and will not be disturbed on appeal.
In view of the foregoing, we reverse and remand for a reconsideration of the marital assets eligible for equitable distribution and their valuation and allocation between the parties in a manner consistent with this opinion. We do not retain jurisdiction.
MICHELS, J.A.D. (dissenting in part).
I respectfully dissent from that portion of the majority opinion holding *267 that plaintiff husband's stock interest in a business acquired after he and defendant wife separated but before this divorce action was instituted was not subject to the equitable distribution of property provisions of N.J.S.A. 2A:34-23 (Supp. 1978). The majority's holding in my view is contrary to the clear mandate of our Supreme Court in Smith v. Smith, 72 N.J. 350, 360-363 (1977); Painter v. Painter, 65 N.J. 196, 217-218 (1974); and Chalmers v. Chalmers, 65 N.J. 186, 192 (1974).
In Painter the Supreme Court initially determined that the property subject to equitable distribution was limited to that property which was acquired by either or both parties from the date of the marriage up to the date the complaint for divorce was filed. In arriving at this decision, the court reasoned:
Finally we think it necessary to consider and determine exactly what span of time is intended by the words, "during the marriage." While apparently clear on its face, the phrase may, in its application, present difficulties. Obviously the period commences as soon as the marriage ceremony has taken place. But when, for the purposes of this statute, does it end? Reading the act literally, the terminal point would seem to be the day the judgment of divorce is granted. Such an interpretation, however, presents practical obstacles. If that date were to be adopted a bifurcated trial would be required in most cases. It would normally not be practicable to introduce at the trial, evidence as to the value of assets determined as of that day. Such a rule, resulting in duplicitous hearings, should be avoided if possible. Conversely, it might be argued that for equitable reasons or for some conceived purpose of public policy no assets should be included that were acquired after it could be shown that there was an irretrievable breakdown of the marriage or after a cause of action for divorce had arisen. But such a rule would be unworkable. How is one to establish with any reasonable precision when a breakdown of the marital relationship has become irretrievable, or, in many cases at least, when a cause of action for divorce first arises?
We think the better rule to be that for purposes of determining what property will be eligible for distribution the period of acquisition should be deemed to terminate the day the complaint is filed. In adopting this interpretation of the statute, we also have in mind the probable necessity in many cases of providing a *268 period for discovery both as to the available marital assets of the other spouse, as well as to their value. [65 N.J. at 217-218; footnotes omitted]
The rule enunciated in Painter was modified thereafter in Smith to cover the situation where the parties to the divorce action had entered into a formal separation agreement and had actually separated. In this limited instance, the Supreme Court held that the date at which the marriage will be deemed to have terminated for purposes of determining what property will be eligible for distribution will be the date of the formal separation agreement. The court stated:
Remaining for consideration is the question of the date as of which assets available for equitable distribution should be identified and valued in a case of this sort. In Painter v. Painter, supra, 65 N.J. at 217-218, we construed the legislative formulation, "property ... which was legally and beneficially acquired ... during the marriage" (N.J.S.A. 2A:34-23; emphasis added) to refer to the period commencing as soon as the marriage ceremony had taken place and ending on the day the divorce complaint was filed. But we made it clear that this choice of a termination date was dictated largely by pragmatic considerations. The public policy giving rise to the equitable distribution law, as we pointed out in Rothman v. Rothman, supra, 65 N.J. at 229, is at least in part an acknowledgment "that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." Assets acquired by the joint efforts of the parties while the shared enterprise continues, should be, on its termination, eligible for equitable distribution. But the precise date on which the enterprise collapses  on which the marriage irretrievably breaks down  is generally impossible or extremely difficult to determine. The formulation of Painter was an attempt to avoid promulgating an unworkable rule.
Neither Painter nor Rothman involved a situation in which the parties had entered into a formal agreement accompanie[s] by actual separation. The execution and delivery of such an agreement, or its inclusion in a judgment, would appear to be incontrovertible evidence that the marital enterprise is no longer viable. To regard the "duration of the marriage" for the purpose of equitable distribution as continuing beyond the date of such an agreement, accompanied by an actual physical separation of the parties, does not come within the spirit of our earlier decisions and is clearly irrational. This would appear to be true both in those *269 instances where the agreement is entered into in conjunction with a judicial decree for separate maintenance, as in Carlsen v. Carlsen, 72 N.J. 363, supra; and where, as in the present case, the agreement is a purely private contract between the parties.
We hold, therefore, that when the parties to a divorce action have previously entered into an agreement of this nature, accompanied by separation in fact, the date at which the marriage will be held to have terminated, for purposes of determining and valuing assets eligible for equitable distribution, will be the date of the agreement. [72 N.J. at 360-362].
The rulings in Painter and Smith are predicated on the recognition that "the precise date on which the enterprise collapses  on which the marriage irretrievably breaks down  is generally impossible or extremely difficult to determine." Smith v. Smith, supra, 72 N.J. at 361. Consequently, in both Painter and Smith, the court used as a termination date for determining property subject to equitable distribution the occurrence of a definitive, objective act or event which was not subject to reasonable dispute, namely, in Painter the filing of a divorce complaint, and in Smith the existence of a formal separation agreement accompanied by actual separation.
The majority goes far beyond these previous Supreme court rulings and disregards the underlying rationale applied by the court in establishing particular termination dates. Without reference to any definitive, objective act or event the majority excludes an asset from distribution merely on the basis that "[t]he marriage [was] factually dead" and the parties had separated. This test not only is contrary to the express holdings in Painter and Smith, by which this court is bound, but ignores the practical approach to the problem therein articulated. The majority extends the Smith rule by its exclusion of property acquired after a separation where the parties had not entered into a formal separation agreement. Plaintiff and defendant did not enter into a formal separation agreement or any other formal agreement which settled their property rights or their support obligations, a conclusion which is clear from the record. The record *270 merely shows that the parties separated, that the separation was apparently mutually acceptable to both, and that, thereafter, plaintiff voluntarily supported his wife and children. This does not constitute the type of "incontrovertible evidence that the marital enterprise is no longer viable," referred to in Smith, 72 N.J. at 361.
In my view the rule in Smith should not be extended to a separation unaccompanied by a formal separation agreement. Absent the existence of such an agreement, coupled with separation in fact, I would adhere to the explicit direction of Painter, viz., that the termination date for determining property subject to equitable distribution is the date on which the complaint for divorce is filed. While ostensibly a mechanistic rule, it would avoid the inherent uncertainty of the test applied by the majority and lead to fair and prompt judicial resolution of these matters.
The majority rule will undoubtedly spawn endless and unnecessary litigation concerning such metaphysical inquiries as when the marriage between the parties irretrievably broke down. Not only will additional financial burdens be cast on litigants in divorce actions but our matrimonial judges will be called upon to resolve extremely difficult, if not impossible questions. This is exactly the unworkable concept rejected by the Court in Painter and Smith.
Accordingly, I would affirm the trial court's finding that plaintiff's stock interest in J.B.L. Corporation was eligible for equitable distribution pursuant to N.J.S.A. 2A:34-23. I also disapprove of the holding in Ross v. Ross, 151 N.J. Super. 486 (Ch. Div. 1977).
I am in complete accord with all other aspects of the majority decision.
NOTES
[1] The New Jersey legislation does not define the time frame for the identification of distributable assets. It provides for "equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." N.J.S.A. 2A:34-23. (Emphasis supplied). Thus, it requires judicial pronouncements to construe the meaning contemplated by the words "during the marriage." See Painter, supra, 65 N.J. at 215. This legislative treatment is contrasted with states such as California (Cal. Civil Code § 5118), Louisiana (Louisiana Civil Code, Art. 2334), and Kentucky (Kentucky Rev. Stat. § 403.190 (2)), wherein the cut-off date for acquired property is established by specific definition in legislation.
[2] The trial judge found as a fact that "the parties were separated since 1966 with no reasonable prospect of reconciliation."