WILLIAM A. BRANDENBURG, PLAINTIFF-RESPONDENT, v. BARBARA BRANDENBURG, DEFENDANT-APPELLANT.

Argued February 19, 1980—Decided June 12, 1980.

*James C. Orr* argued the cause for appellant (*Lum, Biunno & Tompkins,* attorneys; *Claire T. Barile,* on the brief).

*Donald R. Conway* argued the cause for respondent (*Joseph P. Castiglia,* on the brief).

The opinion of the Court was delivered by

PASHMAN, J.

In a divorce proceeding, a court has the power "to effectuate an equitable distribution of the property * * * acquired * * * during the marriage." *N.J.S.A.* 2A:34–23. In this case we are once again called upon to examine when the marriage terminates so as to place after acquired property beyond the reach of this power.

## I

### *Facts*

The parties were married in 1944 and had two daughters, both of whom were emancipated at the time of trial. During the early 1960's, plaintiff William Brandenburg had founded and was the principal owner of Norris Manufacturing Company. Around the beginning of 1966, the company was liquidated to satisfy a quarter million dollar judgment against it. Plaintiff forfeited his stockholdings to pay the judgment. Defendant Barbara Brandenburg received $37,000 for her stock, and plaintiff placed other proceeds totalling $60,000 in trust for the two daughters. Soon afterwards, the husband moved from the marital home.

Shortly after the liquidation of Norris Manufacturing Company, several of its former employees formed JBL Corporation. This new enterprise did not receive any assets from the proceeds of the earlier liquidation. The new company retained plaintiff as a general manager. He received stock options as compensation but did not become a stockholder until 1969 or 1970. At the time of trial, plaintiff owned approximately 59% of the new corporation.

When the parties separated in 1966 plaintiff moved to an apartment in Hawthorne, New Jersey. Defendant continued to reside in the marital home in Montclair, New Jersey, with the two daughters. During this time, plaintiff gave defendant between $595 and $695 per month and paid all of the household expenses. In 1974 the Montclair home was sold and plaintiff purchased a condominium for defendant and the children in

Clifton, New Jersey, with the proceeds of the sale and a $15,000 loan. Plaintiff then increased his support payments to $700 per month. He continued to pay all household expenses until three or four months before trial, when payments were increased to $800 per month.

Although the parties separated in 1966, it was not until February 20, 1976, that plaintiff filed suit for divorce based on 18 months' separation. Defendant filed a counterclaim seeking divorce on grounds of separation and desertion. A judgment of divorce in favor of both parties on the ground of separation, see *N.J.S.A.* 2A:34–2(d), was granted on February 23, 1977.

The trial court awarded defendant $20,000 per year in alimony. Applying our ruling in *Painter v. Painter*, 65 *N.J.* 196 (1974), the court made equitable distribution of all assets acquired by the parties since their marriage in 1944 until the date on which plaintiff filed the complaint in 1976. Defendant was awarded property valued at one-third of the total worth of these assets. This distribution included plaintiff's stockholdings in JBL Corporation—valued by the trial judge at $468,000—which he had not acquired until some three years after the parties separated. The court adjudicated the matter prior to this Court's decision in *Smith v. Smith*, 72 *N.J.* 350 (1977), in which we held that a written separation agreement would mark the end of the marriage for equitable distribution purposes.

Plaintiff appealed to the Appellate Division, contending that assets acquired after the 1966 separation—specifically the JBL stock—should not have been subject to distribution. He argued that under the reasoning in *Smith,* the oral agreement to separate in 1966 and the parties' continued adherence to that agreement constituted sufficient evidence of a marital breakdown in 1966. Plaintiff urged the Appellate Division to use this earlier date as the time of the marriage's termination instead of the "date of complaint" as required by *Painter.* This would have excluded from equitable distribution assets acquired after 1966, including the stock in the new corporation. He also challenged the equitable distribution award on the grounds that certain of the court's valuations and computations were erroneous.

The Appellate Division reversed and remanded the case for recomputation of the equitable distribution award. The majority held that since the parties' oral agreement to separate marked the end of their marriage, equitable distribution could not include the plaintiff's later acquired stock in JBL Corporation.[1] 167 *N.J.Super.* 256 (App.Div.1979). Relying on our decision in *Smith*, the court concluded that if evidence that the marital enterprise is no longer viable is "clear and unequivocal, the inclusion of property thereafter should not depend upon the existence of a formal document designated as a separation agreement." 167 *N.J.Super.* at 262. Since the Brandenburgs had "separated under a mutual oral understanding and did not cohabit for a period of ten years," the majority concluded that "it would be 'clearly irrational' to include as distributable assets property acquired by the husband years after such a continuous and final breakdown of the normal marital relationship." 167 *N.J.Super.* at 262–263 (quoting *Smith*, 72 *N.J.* at 361). The court also found that defendant's support of her husband as a homemaker and wife was lacking after the separation. This was a "corroborating relevant factor" in the court's determination that plaintiff's JBL stock was not subject to distribution. 167 *N.J.Super.* at 264.

Judge Michels dissented on the issue of when the marriage had ended for purposes of equitable distribution. He stated that in the absence of a formal separation agreement, the date the complaint is filed should govern. The dissent would have affirmed the trial court's finding that the JBL stock was eligible for equitable distribution. *Id.* at 266–270 (Michels, J. A. D., dissenting in part).

■ Defendant appealed to this Court from the Appellate Division judgment. Under *R.* 2:2–1(a)(2), this appeal as of right is limited to "those issues as to which * * * there is a dissent in the Appellate Division." The only question before us, therefore, is whether the parties' separation in 1966 marked the

---

[1]The court also found several valuation findings to be in error. 167 *N.J.Super.* at 264–266.

end of their marriage for purposes of equitable distribution. As to that issue we now reverse the Appellate Division.

## II

### *The Meaning of "During the Marriage"*

As part of the Divorce Reform Act of 1971, *L.* 1971, *c.* 212, courts were given power to divide marital assets upon divorce:

> In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage. [*N.J.S.A.* 2A:34–23]

In upholding the constitutionality of this legislation, this Court explained that "the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." *Rothman v. Rothman*, 65 *N.J.* 219, 229 (1974).

We were first called upon to rule on the meaning of the words "during the marriage" in the companion cases of *Chalmers v. Chalmers*, 65 *N.J.* 186 (1974), and *Painter, supra.* As Justice Mountain noted in *Painter*, "While apparently clear on its face, the phrase may, in its application, present difficulties." 65 *N.J.* at 217. In part these difficulties result from the absence of any statutory definition of the term and from the total lack of relevant legislative history.[2]

In *Painter* we rejected a literal reading of the statute that would have fixed the terminal point of the marriage on the day the judgment of divorce was granted. Such an interpretation would have necessitated bifurcated trials in most cases, since "[i]t would normally not be practicable to introduce at the trial,

---

[2]As we noted in *Painter*, the equitable distribution provision was added to the Divorce Reform Bill during its passage. See 65 *N.J.* at 217. The Senate Judiciary Committee, which drafted the relevant language, issued no report on the amendment. The Divorce Law Study Commission, which suggested extensive reforms in the laws, recommended that the question of property distribution receive further study. See *Final Report of Divorce Law Study Commission* 97 (1970).

evidence as to the value of asserts determined as of that day." *Id.* At the other extreme, we rejected an interpretation that would exclude assets acquired "after it could be shown that there was an irretrievable breakdown of the marriage * *." *Id.* Since the latter rule could not be applied with reasonable accuracy, we considered it unworkable. The companion case of *Chalmers* held that fault was not a relevant factor for determining equitable distribution. 65 *N.J.* at 193. We therefore rejected the accrual of a cause of action for divorce—in that case, adultery—as marking the end of a marriage. *Id.* at 194.

After rejecting these alternatives in *Painter* and *Chalmers*, we concluded that in general the "better rule" was to adopt the filing date of the complaint as the end of the marital partnership. *Painter,* 65 *N.J.* at 218. We recognized, however, that this rule would not provide "certain and ready answers" in all cases involving equitable distribution. *Id.* at 218 n.7.

This acknowledgement proved correct in the later companion cases of *Smith, supra,* and *Carlsen v. Carlsen,* 72 *N.J.* 363 (1977). In *Smith* we reaffirmed the premise of *Painter* that "the precise date on which the enterprise collapses—on which the marriage irretrievably breaks down—is generally impossible or extremely difficult to determine." 72 *N.J.* at 361. We noted that "[t]he formulation of *Painter* was an attempt to avoid promulgating an unworkable rule." *Id.* The facts then before us, however, presented an opportunity to fashion a workable alternative to the date of complaint rule, since the parties in *Smith* had entered into a formal separation agreement accompanied by physical separation. We concluded that it would be "clearly irrational" to regard the duration of the marriage as continuing beyond the date of the execution and delivery of such an agreement. *Id.* We therefore held that

> [W]hen the parties to a divorce action have previously entered into an agreement of this nature, accompanied by separation in fact, the date at which the marriage will be held to have terminated, for purposes of determining and valuing assets eligible for equitable distribution, will be the date of the agreement. [*Id.* at 361–362]

We also held that this rule should apply when such an agreement is made in conjunction with a judicial decree for separate maintenance. *Carlsen v. Carlsen,* 72 *N.J.* at 370–371.

After the Appellate Division decision in the present case, this Court decided *DiGiacomo v. DiGiacomo*, 80 *N.J.* 155 (1979). There we recognized that application of the *Painter* rule was inappropriate even though, unlike in *Smith* and *Carlsen*, the parties had not entered into a written separation agreement. The parties in *DiGiacomo* had separated and divided a large part of their assets in a manner orally agreed upon by them. We held that this arrangement was a property settlement, and "although not in writing, [was] as valid and effective, upon sufficient proof, as if it had been more formally memorialized." *Id.* at 159. We therefore held that "[p]roperty acquired by either spouse subsequent to the agreement is not eligible for [equitable distribution]." *Id.*

These cases following *Painter* recognize that there can be reliable indicia of an end of the marital partnership other than the filing of a complaint for divorce. We must now consider whether the facts presented in this case afford a proper occasion for again deviating from the *Painter* rule.

### III

#### *Separation Without an Agreement*

The Appellate Division held that an oral agreement to separate accompanied by physical separation proves that the marriage is "dead." This principle is a virtual abandonment of the rule in *Painter* that designates the date of the divorce complaint as the end of the marital partnership. The pragmatic considerations which guided our choice of the termination date in that case, see *Painter*, 65 *N.J.* at 217, persuade us to retain the presumption that the marital partnership continues until a complaint for divorce is filed.

As we recognized in *Painter*, the task facing the trial judge in making an equitable distribution of marital assets will seldom be an easy one. See 65 *N.J.* at 212; see also *Rothman*, 65 *N.J.* at 232–233. The burgeoning divorce rate in New Jersey, see *Annual Reports*, Administrative Director of the Courts (1969 through 1978); "Supreme Court Establishes Committee on Mat-

rimonial Litigation" (Statement of Chief Justice Hughes), 102 *N.J.L.J.* 545, 552 (1978), and the complexity of the many issues facing a matrimonial court call for rules that possess some degree of certainty and ease of application. When a complaint has been filed or the parties themselves have implemented a separation agreement, the date on which the marital partnership has terminated is not "impossible or extremely difficult to determine." *Smith*, 72 *N.J.* at 361. But mere physical separation alone is an insufficient indication that a marriage is effectively at an end.

Judicial inquiry into the circumstances of a separation would introduce all the difficulties we have consistently sought to avoid. Case-by-case searches for the elusive point when a marriage disintegrates would be necessary. Trial courts would be embroiled in analyzing the entire course of events during the period of separation. Any contact between the spouses would require scrutiny. Much of the evidence would come from the parties themselves; credibility and corroboration would be persistent problems. Any examination of the nature and meaning of the parties' separation would require extraordinary amounts of judicial time and energy. Because of the character of the evidence which would be involved, the resulting adjudications would be neither reliable nor consistent.

On balance, we find no injustice in requiring a more definite indication than mere physical separation to support a conclusion that the marital partnership terminated prior to the date of a divorce complaint. We have held that the execution of a separation agreement will mark the end of the acquisition period. See *Smith v. Smith, supra; Carlsen v. Carlsen, supra; DiGiacomo v. DiGiacomo, supra.* Although agreements will not bar equitable distribution unless they are equitable and fair, they will limit any required judicial distribution to assets acquired prior to the date of the agreement. Since separation agreements are no longer subject to the rule of unconscionability when later modification is sought, see *Lepis v. Lepis*, 83 *N.J.* 139 (1980), any risks associated with such an approach have been substantially reduced. Thus the acquisition period can be

terminated close to the time of separation if the parties enter into a separation agreement.

Under our "no fault" ground for divorce, a complaint may be filed 18 months after the parties separate. *N.J.S.A.* 2A:34–2(d). Given the relative speed and ease with which a divorce action may now be initiated, we do not consider the *Painter* date-of-complaint rule to impose any great hardship on a spouse who is not able to enter into an agreement with the other spouse.

## IV

### *Separation with an Agreement*

The question remains what type of separation agreement qualifies as signaling the end of the acquisition period. We consider this issue to be resolved by our earlier decisions on the subject. As is evident in *Smith* and *Carlsen,* a written agreement to separate which includes support or property settlement provisions will fix the termination date. *Carlsen,* 72 *N.J.* at 369–371; *Smith,* 72 *N.J.* at 361–362.[3] However, when an agreement is not written, only the actual division of marital property pursuant to that agreement will be considered sufficient evidence that the marital partnership is no longer viable. See *DiGiacomo,* 80 *N.J.* at 159, 402 *A.2d* 922.

In many cases an oral agreement as to division of marital property will be more difficult to prove than a written agreement. Yet where the parties to a marriage have completely divided their assets, it would be grossly inequitable to include later acquired assets as part of the marital estate. The crucial element of proof—an actual distribution of assets—is easily

---

[3]This proposition should be distinguished from our holding in *Smith* that only a property settlement agreement could completely bar later equitable distribution of marital assets under *N.J.S.A.* 2A:34–23. 72 *N.J.* at 358. We applied this rule to oral agreements in *DiGiacomo,* 80 *N.J.* at 159. Where an agreement provides for "support * * * and nothing more," *Smith,* 72 *N.J.* at 358, its date would terminate the period of acquisition of assets subject to distribution. *Id.* at 361–362. An agreement limited to support, however, would not foreclose judicial allocation of assets acquired during the period ending with the agreement. *Id.* at 363.

susceptible of verification. Since a partial distribution would not necessarily demonstrate the end of the marital partnership, an agreed distribution must involve "a large part of [the] marital assets," *DiGiacomo v. DiGiacomo*, 80 *N.J.* at 159.

In contrast to a written agreement, an oral agreement that involves only support payments is an inherently poor indication of the end of a marriage. The possibilities of fabrication and the consequent problems of proof render it as unreliable as mere physical separation. See *supra* at 206–207. Without a written agreement, support payments cannot be interpreted to signal the end of the marital partnership. A writing carries a clear expression that both parties no longer consider themselves a partnership; so does an actual division of their property. However, a dependent spouse has little choice but to accept support payments volunteered by the other spouse. To characterize support payments as a sign that a marriage has dissolved would force a dependent spouse to refuse needed support to demonstrate that the separation was not final. We therefore agree with the dissent in the Appellate Division that physical separation and the payment of support "does not constitute the type of 'incontrovertible evidence that the marital enterprise is no longer viable,' * * *." 167 *N.J.Super.* at 270 (Michels, J. A. D., dissenting in part) (quoting *Smith*, 72 *N.J.* at 361).

## V

### Disposition

The following rules emerge from our analysis. In the absence of a qualifying separation agreement, the date a complaint is filed will fix the termination date of a marriage for purposes of equitable distribution. If the parties have entered into a written separation agreement accompanied by actual physical separation, the date of the agreement will terminate the period of acquisition of distributable assets.[4] If the parties

---

[4]We reiterate that this date will be used even though the agreement may not bar equitable distribution either because it does not qualify as a "property

have separated in fact and divided their property pursuant to an oral agreement, assets acquired afterwards are not eligible for equitable distribution.

While these rules govern the eligibility of assets for equitable distribution, they do not prescribe the manner of that distribution. As we explained in *Rothman*, a trial judge engages in a "three-step proceeding" when effecting equitable distribution:

[H]e must first decide what specific property of each spouse is eligible for distribution. Secondly, he must determine its value for purposes of such distribution. Thirdly, he must decide how such allocation can most equitably be made. [65 *N.J.* at 232].

The rules we have announced today refer to the first of these steps. Our rejection of the parities' separation as the termination date on eligibility does not mean the trial court must ignore the separation once it reaches the third step. The purpose of equitable distribution—the recognition of the "contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker," *Painter*, 65 *N.J.* at 212—requires an assessment of the spouses' contributions in each individual case. *Rothman*, 65 *N.J.* at 232 n.6. In undertaking the third step, the trial court should consider the effect of separation on the respective contributions of the parties to the further acquisition of marital property.

Applying these rules to the case before us, we conclude that the Appellate Division erred in excluding assets acquired after the parties separated in 1966. The parties did not enter into a written separation agreement. Nor does the record reveal that the parties divided a large part of the marital assets pursuant to an oral agreement. Defendant's receipt of $37,000 about the time of separation does not bring this case within our ruling in *DiGiacomo*. These proceeds from defendant's stock-holdings in Norris Manufacturing Company were the result of a forced liquidation of the business enterprise, not an agreement

settlement," see *Smith*, 72 *N.J.* at 358, or because it is not "equitable and fair," see *DiGiacomo*, 80 *N.J.* at 159 n.2.

between plaintiff and defendant to separate. On the present record, there is no other evidence of a property settlement agreement between the parties; thus there is no support for the conclusion that they had agreed to divide a large part of the marital assets.

Plaintiff asserts that the parties orally agreed to separate and agreed on the amount of support he was obliged to provide defendant. This, however, would not qualify as the type of separation agreement which can fix the date for equitable distribution purposes.[5] Should this be the extent of the parties' agreement to separate, the date-of-complaint rule of *Painter* would necessarily apply as the termination of the marital partnership. Evidence regarding the parties' contributions to the acquisition of assets after separation would require evaluation. This evidence would form part of the basis for the equitable distribution to be ordered by the trial court.

Since the case was tried without the benefit of any of our rulings following *Painter*, the parties should be permitted on remand to introduce further evidence on the nature and scope of any oral agreement of separation and distribution of property. If the court finds an oral property settlement, it will use the date of that agreement to determine the assets eligible for distribution. The agreement will also foreclose judicial allocation of included assets to the extent it was equitable and fair when made.

Accordingly, the judgment of the Appellate Division is reversed and the matter remanded for further proceedings in accordance with this opinion.

---

[5]The Appellate Division correctly noted that the record supports the finding that the separation marked the end of defendant's performance of the functions of homemaker and wife. However, it incorrectly concluded that assets acquired thereafter were ineligible for distribution. As we have stated, the apparent cessation of defendant's contributions is but one of several factors to be considered when equitably distributing marital assets. See *supra* at 210; *Painter*, 65 *N.J.* at 212.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—none.