186 N.J. Super. 410 (1982)
453 A.2d 189
BARBARA PORTNER, PLAINTIFF-APPELLANT,
v.
MORTON PORTNER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1982.
Decided April 5, 1982.
*412 Before Judges BOTTER, ANTELL and FURMAN.
Ronald A. Graziano argued the cause for appellant (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys; Lois Seiden Garber on the brief).
Clyde Walker, Jr., argued the cause for respondent (Keyko and Walker, attorneys; Clyde Walker, Jr. on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
The parties were divorced by judgment dated September 22, 1980. On this appeal plaintiff challenges rulings of the trial judge (1) fixing the terminal date of the marriage for the purpose of identifying property eligible for equitable distribution under N.J.S.A. 2A:34-23 as having been acquired "during the marriage," and (2) rejecting plaintiff's offer, as a declaration *413 against interest admissible pursuant to Evid.R. 63(10), of an out-of-court statement allegedly made by defendant's brother which pertained to defendant's ownership of a townhouse in Philadelphia, title to which was in defendant's brother's name.
Plaintiff and defendant were married on September 24, 1960 and one child was born to them in 1964. In August 1974 defendant left the marital home in New Jersey and moved to Philadelphia where his business was located. On November 6, 1974 this action was begun by the filing of a complaint for separate maintenance based on a claim of desertion and nonsupport. An order for support pendente lite was entered on February 24, 1975.
On August 26, 1975 defendant filed a complaint for divorce in Pennsylvania. That action was ultimately dismissed for lack of prosecution after it became apparent that defendant was unable to prove a cause of action under Pennsylvania law. Later, after moving from Philadelphia to Delaware, defendant filed an action for divorce in Delaware, but relief was "denied" to him in that action also, and he returned to Philadelphia. On December 11, 1979 plaintiff amended her complaint in this action to seek a divorce on the ground of separation for 18 months, and defendant counterclaimed for a divorce on the same ground. On these facts the trial judge determined that the marriage was "dead" for all intents and purposes when the parties separated in 1974 and that assets thereafter acquired were ineligible for distribution. The principal significance of this conclusion was that a townhouse in Philadelphia in which defendant resided would not be subject to equitable distribution even if defendant and not his brother was the true owner, since it was acquired in 1977.
The Supreme Court has sought a practical rule for determining the end of a marriage for equitable distribution purposes. The date of the divorce judgment was rejected in Painter v. Painter, 65 N.J. 196, 217-218 (1974), in favor of the date the divorce complaint was filed. However, Smith v. Smith, 72 N.J. 350, 361-362 (1977), held that a separation agreement *414 accompanied by separation of the parties in fact, even without a property settlement, would mark the terminal date of the marriage for these purposes. The same result would apply when the agreement is the basis for a separate maintenance decree. Carlsen v. Carlsen, 72 N.J. 363, 370-371 (1977); see Smith v. Smith, supra, and Brandenburg v. Brandenburg, 83 N.J. 198, 205 (1980). Separation of the parties accompanied by the physical division of a substantial portion of their assets, without a formal separation agreement, also fixes the date for determining when the parties are deemed to have gone their separate ways for the purpose of sharing in property acquired thereafter. DiGiacomo v. DiGiacomo, 80 N.J. 155 (1979). However, an oral agreement involving support payments only will not signal the end of the marriage since it is not "a clear expression that both parties no longer consider themselves a partnership...." Brandenburg v. Brandenburg, supra, 83 N.J. at 209.
Applying these principles to the case at hand we conclude that the filing of a separate maintenance action and the entry of an order for support pendente lite will not be deemed to end the marriage for equitable distribution purposes. These events do not signify acceptance of the separation by both parties but merely reflect a spouse's need for support, as in Brandenburg, supra. Nor was it an unequivocal signal of the termination of the marriage by the party bringing the action, as in the case where a divorce is sought.
The subsequent filing of an action for divorce by defendant in Pennsylvania signaled his rejection of marital ties and should be taken to mark the end of the marital partnership for the purpose of sharing in after-acquired property. The reasons given in the cases for using the commencement date of a divorce action in this State apply as well to an action for divorce brought in a sister state. Equitable distribution is the division of assets accumulated through the joint efforts of the parties during "the shared enterprise" of marriage. Smith v. Smith, supra, 72 N.J. at 361. Regardless of the date on which the *415 divorce action is commenced, the purpose of equitable distribution is to divide fairly assets acquired when both parties contributed to the marital enterprise, whether by earned income or as a homemaker. Brandenburg v. Brandenburg, supra, 83 N.J. at 210. Thus, using the date when the Pennsylvania divorce action was commenced comports with the object of excluding property acquired after the parties cease to contribute as a team to common marital goals. The fact that defendant was unsuccessful in his Pennsylvania divorce action does not alter this result, since termination of the action was not followed by reconciliation of the parties. What followed, in fact, was defendant's move to Delaware and the prosecution of a new divorce action for a period of time not clearly revealed in the record before us. This was consistent with his earlier attempt to end the marriage.
Thus, we conclude that the date determining the division of assets in this case is August 26, 1975. Ordinarily, this would not alter the result reached below since the principal undistributed asset allegedly owned by defendant, the Philadelphia townhouse, was not acquired until 1977. Distribution of that asset was excluded by the trial judge at the end of the trial on the ground that plaintiff failed to carry the burden of proving that defendant had an ownership interest in the property whose title was in the name of defendant's brother.
The Philadelphia townhouse was purchased as a shell for $40,000. It was actually two small buildings made into one residence by breaking down the party wall. After its acquisition it was renovated extensively. Its market value was appraised at $210,000 by plaintiff's expert and at $135,000 by defendant's expert. Defendant claimed it was bought by his brother Max, with whom defendant was engaged in the jewelry business (defendant contended that he sold his interest in that business to his brother in 1976). Defendant also claimed that he rented the house from his brother for $200 a month plus utilities, although the trial judge found that the fair market rental was substantially higher and constituted additional indirect income *416 received by defendant from his "employment" by his brother's corporation. The written lease presented at trial by defendant was contradicted by his earlier answer to interrogatories stating that he rented the property without a lease. In various respects the trial judge found defendant's testimony lacked credibility; however, he concluded that plaintiff did not carry her burden of proof as to defendant's ownership of the townhouse.
The determination of ownership of the building was significant in this case regardless of the date of acquisition, since it could reflect upon the accumulation of substantial assets by defendant despite his claimed relatively low salary, and part of those assets could have been accumulated before the separation of the parties. There was proof that part of the business income came through cash transactions and that a substantial portion of marital expenses had been paid in cash.
Thus, although the Philadelphia townhouse was acquired after the terminal date of the marriage, we consider its ownership relevant to the issue of equitable distribution to the extent that its acquisition and renovation (the cost of the latter was given at $50,000 through hearsay testimony admitted over objection) may reflect assets accumulated by defendant during the marriage. For this reason we cannot disregard additional evidence offered by plaintiff of defendant's equitable interest in the property which was excluded by the trial judge. This evidence was offered through an investigator who spoke with defendant's brother Max. Max purportedly told the investigator that the townhouse actually belonged to defendant, as well as an automobile in Max's name used by defendant, and that they both owned the business although defendant's interest was transferred to Max because of the pending divorce action. The trial judge rejected the evidence as hearsay despite the provisions of Evid.R. 63(10). In doing so he erred.
Evid.R. 63(10) provides:
A statement is admissible if at the time it was made it was so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to a civil *417 or criminal liability or so far rendered invalid a claim by him against another or created such a risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true, except that such a statement is not admissible against a defendant other than the declarant in a criminal prosecution.
Clearly, a statement by a person who has title to valuable property that the property belongs to someone else must normally be considered "so far contrary to the declarant's pecuniary or proprietary interest" that he would not have made the statement unless he believed it to be true. Exceptions can be found in various circumstances, such as when one disclaims ownership of contraband or property used in the commission of a crime. There, denial of ownership could serve declarant's other interests. However, "acknowledgments that the declarant does not own certain land or personal property" are among the "common instances" of declarations against proprietary or pecuniary interest. McCormick, Evidence (2 ed. Cleary 1972), § 277 at 671. Wigmore states:
A statement predicating of oneself a limited interest instead of a complete title to property asserts a fact decidedly against one's interest, and has always been so regarded. In particular, assertions that one's estate is a leasehold, not a freehold, or that one's possession is merely as agent or as trustee for another, are admissible.... [5 Wigmore, Evidence (Chadbourn rev. 1974), § 1458 at 329]
Although the trial judge considered the statement of brother Max to be against defendant's interest in this litigation, he overlooked the fact that the statement diminished Max's interest in valuable property, and his statement could be used against him if he were to dispute defendant's claim to the property one day. Moreover, though of lesser significance, the information was elicited in connection with a feigned interview for a credit card, and Max would have no interest in diminishing his wealth for that purpose. Statements against one's proprietary or pecuniary interest are "unlikely to be deliberately false or heedlessly incorrect," id. § 1457, and this guarantee of reliability is why they are made an exception to the hearsay rule. Moreover, unavailability of the declarant is not a condition of admissibility. State v. Barry, 86 N.J. 80, 91 (1981); Report of the New Jersey *418 Supreme Court Committee on Evidence, Comment on Rule 63(10) at 169 (1963).
Although plaintiff presented other evidence of defendant's ownership of the townhouse in Philadelphia, we cannot say that the excluded evidence would not have affected the trial judge's conclusion on the issue. Moreover, our comments on the significance of defendant's alleged ownership despite the date of its acquisition may alter the result to be reached in this case.
Accordingly, so much of the divorce judgment adjudicating that the property at 231 Bambridge Street, Philadelphia, Pennsylvania, "shall not be subject to equitable distribution following a finding of no ownership by the defendant" is reversed and vacated. The matter is remanded to the Chancery Division for a new trial to determine the extent of defendant's interest, if any, in the Philadelphia townhouse and to redetermine equitable distribution if it is found that defendant has an interest in the property derived from funds acquired "during the marriage" as defined herein.
ANTELL, J.A.D. (dissenting).
I dissent from the majority's holding that August 26, 1975, the date defendant filed his later dismissed Pennsylvania divorce complaint, marks the end of the marriage. Under governing principles the marriage continued until December 11, 1979, when plaintiff amended her complaint to demand a judgment of divorce, and assets acquired until that date are distributable as part of the marital estate.
In Painter v. Painter, 65 N.J. 196, 218 (1974), the Supreme Court announced as the "better rule" that the marriage ends when the divorce complaint is filed. Acknowledging that this would not provide "certain and ready answers to all questions," it was nevertheless chosen as a preferable alternative to a case by case inquiry as to "when a breakdown of the marital relationship has become irretrievable." Id. at 217-18. As the court later said in Smith v. Smith, 72 N.J. 350, 361 (1977), its choice in *419 Painter was dictated by "pragmatic considerations" and reflected "an attempt to avoid promulgating an unworkable rule."
Although exceptions therefrom emerged in Smith v. Smith, supra; Carlsen v. Carlsen, 72 N.J. 363 (1977) and Di Giacomo v. Di Giacomo, 80 N.J. 155 (1979), the utilitarian Painter rule remains the basic standard by which to measure the duration of the marriage. Its soundness rests on three assumptions germane to the filing of a divorce complaint: (1) a valid cause of action; (2) an unconditional intention to obtain a divorce and (3) an uninterrupted continuation of the proceeding to the entry of a judgment. Without these conditions the terminal significance assigned to the filing of a complaint is unwarranted. What other justification is there for saying that the marriage dies when the complaint is filed other than the implicit expectation that the action thus begun will in fact end with the legal dissolution of the union?
Without question, the Painter rule presupposes the bringing of a provable action. The Supreme Court said as much in Brandenburg v. Brandenburg, 83 N.J. 198 (1980). There, at 207-208 it was explained that a spouse who was unable to close the acquisition period by coming under one of the exceptions to Painter need suffer no great hardship since the same result can be achieved by filing a no fault divorce complaint "18 months after the parties separate." Had it chosen, the court could even more convincingly have made its point that no great hardship need be suffered by saying that such an action could be brought immediately upon separation. But it pointedly refrained from doing so. It specified that the divorcing spouse must at least wait out the relatively brief period prescribed for a cause of action to accrue.
The majority holding that the acquisition period in this case ended with the filing of defendant's groundless Pennsylvania action implies that parties may now close the acquisition period immediately upon separation simply by filing, in New Jersey or elsewhere, a completely unmeritorious suit. This contravenes *420 what Brandenburg made clear, and what was plainly foretold by Painter. Painter's purpose, after all, was to express a sensible formula for determining when a marriage ends, and I do not acquiesce in the notion that in so doing it intended to foster the concept of a marriage being legally dead where neither party has grounds for divorce. Nor can I agree that it intended to encourage disregard of its own rules of practice requiring plaintiff in a divorce action to verify "that his pleading is made in truth and good faith," R. 4:77-2, and declaring that by placing his signature on a pleading an attorney certifies "that to the best of his knowledge, information and belief there is good ground to support it," R. 1:4-8.
In addition, it does not appear that in filing his Pennsylvania action defendant manifested his unequivocal intent to end the marriage. The premise of Painter seems to be that by filing the complaint the plaintiff is signaling that after careful deliberation he has chosen to seek a divorce with all its commensurate burdens. Here, while defendant was free to seek a dissolution of the marriage in New Jersey, he eschewed this course and sought relief in the courts of two foreign jurisdictions. Why, we are not told. But after those actions were discontinued nothing further transpired until about four years later when plaintiff amended her complaint. Apparently, defendant was interested in securing a divorce, but only on his terms; that failing, he was content to continue the marriage. Whatever his reasons for continuing the conjugal state, so long as he withheld decisive action we cannot say that the marriage had become defunct. The logic of interpreting a divorce complaint as the marital requiem is defensible only where the marriage does in fact terminate as a result of that proceeding.
Moreover, once a case terminates short of a divorce a myriad of questions immediately arise: Why was the action brought? Why was it dismissed? What were the relations of the parties thereafter? Did they amount to a reconciliation? How should the answers to these and the many other questions that follow be interpreted in order to determine whether the marriage had *421 really died or remained viable? Far from being an unambiguous signal, an abortive action is merely a single item of evidence which must be analyzed together with a host of other tangled facts and we are brought back into the very thicket Painter was designed to avoid. It was described by Justice Pashman in Brandenburg v. Brandenburg, supra, thus:
Judicial inquiry into the circumstances of a separation would introduce all the difficulties we have consistently sought to avoid. Case-by-case searches for the elusive point when a marriage disintegrates would be necessary. Trial courts would be embroiled in analyzing the entire course of events during the period of separation. Any contact between the spouses would require scrutiny. Much of the evidence would come from the parties themselves; credibility and corroboration would be persistent problems. Any examination of the nature and meaning of the parties' separation would require extraordinary amounts of judicial time and energy. Because of the character of the evidence which would be involved, the resulting adjudications would be neither reliable nor consistent. [83 N.J. at 207]
The majority rests its decision on the belief that it "comports with the object of excluding property acquired after the parties ceased to contribute as a team to common marital goals." I cannot join in this conclusion simply because we are totally uninformed about any of the relevant circumstances prevailing during the four years between the foreign divorce action and plaintiff's divorce complaint in December 1979. Furthermore, for the reasons which I have stated, its result is inconsistent with the rationale of Painter v. Painter and the well defined exceptions thereto. In reaching this judgment I intend to say no more than that assets acquired prior to December 1979 are eligible for distribution. In determining how they should be equitably allocated between the parties the trial judge should, of course, "consider the effect of separation on the respective contributions of the parties to the further acquisition of marital property." Brandenburg, supra 83 N.J. at 210.
My final observation concerns the practical consequences of choosing a terminal date for the marriage in this case. These are by no means inconsiderable. The Philadelphia town house was bought in 1977, two years after the Pennsylvania divorce *422 complaint, for $40,000. Thereafter, an additional $50,000 was spent on renovation over a period of time. However, the evidence of its market value ranges between $135,000 and $210,000. If the acquisition period continued until December 1979, this substantial asset becomes eligible for distribution and must be valued as of the date of termination. Smith v. Smith, supra 72 N.J. at 361-62; Borodinsky v. Borodinsky, 162 N.J. Super. 437, 447 (App.Div. 1978). Such a valuation would be markedly greater than the dollar investment which the asset represents.
Although the majority opinion permits plaintiff to offer further evidence that defendant, not his brother, is the true owner of the property, this allows her nothing more than a chance to increase the marital estate "to the extent that its [the property's] acquisition and renovation ... may reflect assets accumulated during the marriage." In other words, if plaintiff can succeed in showing that defendant spent $90,000, beginning in 1977 and continuing thereafter, in buying and improving the building, then the trial judge, depending on how he views all the evidence, will be permitted to infer that these monies reflect, in whole or in part, assets which defendant accumulated before August 26, 1975 when he filed the Pennsylvania complaint.
If the difficulties in this undertaking are not already evident, it should be underscored that in March 1976 defendant "sold" his share of a thriving business in which he was a dominant figure to his brother Max, and is now "employed" by Max, performing the same duties he did as an owner, at a salary of $300 a week, and lives in a town house "owned" by Max in return for a rental well below what the market commands. While the ultimate judgment must be made by the trial judge, defendant is well prepared to face this inquiry, and the problems plaintiff will face in tracing assets and relating money spent from 1977 on to a period of acquisition which ended in 1975 are probably insurmountable.