ALLSTATE INSURANCE COMPANY, PLAINTIFF, v. PETER SKOLNY AND ALMA SKOLNY, AS ADMINISTRATORS OF THE ESTATE OF ELAINE SKOLNY, DEFENDANTS-APPELLANTS, AND DAVID NEWMAN AND LYNDA NEWMAN, HUSBAND AND WIFE, DEFENDANTS, v. EDWARD MCGRORY, DEFENDANT-RESPONDENT.

Argued November 18, 1980—Decided May 19, 1981.

---

*Leonard F. Rappa* argued the cause for appellants (*Monico & Rappa*, attorneys).

*Mark J. Richman* argued the cause for respondent (*Marra, Gerstein & Richman*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

As in another case decided today, *Gambino v. Royal Globe Ins. Co.,* 86 *N.J.* 100 (1981), we are confronted with the problem of harmonizing the statutory language of the no-fault insurance enactment with legislative intent. In this case we are called upon to determine who is entitled to collect PIP survivor benefits as a result of the death of Elaine Skolny, the insured.

I

Elaine Skolny and Edward McGrory were married August 13, 1974. Nine months later the couple separated, no children having been born. Once the eighteen month period of separation required for a no-fault divorce had passed, Skolny filed for a divorce. A default was entered on April 12, 1977 when McGrory failed to answer the complaint. Before the trial court could finally adjudicate the divorce, however, Skolny died in an automobile accident on June 4, 1977. Thus, at the time of the accident, Skolny and McGrory remained legally married.

The deceased had purchased a PIP insurance policy in July 1976 from the Allstate Insurance Company. The policy included benefits purchased pursuant to *N.J.S.A.* 39:6A–10, in addition to those minimally required by *N.J.S.A.* 39:6A–4.[1]

---

[1] *N.J.S.A.* 39:6A–4 requires all motorists to contract for insurance that includes a provision for the payment of income continuation benefits up to $5,200. *N.J.S.A.* 39:6A–10 mandates that insurers must provide insureds with the option of purchasing extra benefits above that required of all motorists by Section 4. The Commissioner of Insurance, in implementing the no-fault scheme, has determined that $10,000 in death benefits shall be a part of all such supplemental insurance plans. *N.J.A.C.* 11:3–7.3. Accordingly, Skolny's policy provided for $13,000 in income continuation benefits and $10,000 in death benefits.

In December 1977 Allstate filed an interpleader action, requesting that the court decide whether Edward McGrory, the decedent's husband, or the Estate of Elaine Skolny should receive those benefits payable as a result of Skolny's death. The trial judge ruled that the Estate was entitled to receive the income continuation, death, and funeral benefits provided for by the policy and our statutes and regulations. On appeal, the Appellate Division reversed as to the income continuation and death benefits, there being no dispute that the funeral benefits were properly payable to the Estate. See *N.J.S.A.* 39:6A–4(e). This Court granted the Estate's petition for certification. 84 *N.J.* 376.

## II

The operative provision of the PIP statute, *N.J.S.A.* 39:6A–4(d), commands that upon the death of an income producer in an automobile accident, the surviving spouse shall receive the maximum amount of benefits that the deceased would have received had death not occurred. If there is no spouse (and no surviving children), the Estate of the income producer receives the recompense.[2] The crucial inquiry here is the definition of "surviving spouse" as used in the no-fault enactment.

As we have stated in *Gambino v. Royal Globe Ins. Co., supra*, 86 *N.J.* at 107, "in interpreting the (PIP) statute ... the statutory language must be read, whenever possible, to promote *prompt* payment to *all* injured persons for *all* of their losses. Consequently, approaches which minimize resort to the judicial

---

[2]*N.J.S.A.* 39:6A–4(d) reads in pertinent part:

    d. Survivor benefits. In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act, the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b. shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.

process, or at least do not increase reliance upon the judiciary, are strongly to be favored."

In this case, the problem does not involve whether benefits will be paid; the question is who will receive them. In that sense, the requirement that the statute be interpreted so as to provide for the broadest possible coverage is of limited salience. Instead, the concerns of *prompt* payment and minimal resort to judicial procedures come to the forefront and become our paramount benchmarks in evaluating the meaning of the disputed clause.

To effectuate these goals, we conclude, as we did in *Gambino v. Royal Globe Ins. Co., supra,* that a bright line rule was desired by the Legislature in order to forestall the propagation of time-consuming court suits. Thus, we reject the plea of the Estate that this Court apply a highly subjective "breakdown of the marriage" test, based upon the law of equitable distribution or general principles of equity and fairness, in order to determine whether a legal spouse should recover survivor benefits.

We choose to read the language of the statute literally and rely upon the long-standing, clear, and commonly accepted definition of a spouse that recognizes that once a person is legally married, that person remains a spouse until the marriage is legally terminated by a conclusive judicial determination that a party is entitled to a divorce. See *Parker v. Parker,* 128 *N.J.Super.* 230, 232–233 (App.Div.1974); *Olen v. Olen,* 124 *N.J. Super.* 373, 377 (App.Div.1973), certif. den. 63 *N.J.* 570 (1973). Insurance cases in this area were not meant to be transformed into matrimonial disputes. It was not intended that courts be required to determine which married couples were "actually married," in the sense of carrying on those functions which epitomize the institution of marriage, in order to resolve extant insurance claims.[3] Nothing could be more antithetical to the

---

[3] We are not presented with the issue and do not purport to decide whether a couple that has never been married, but has openly cohabited as husband

goal of the PIP statute to insure prompt payment than the introduction of such factually-based disputes into insurance litigation. Our rule forestalls this calamity and provides for ease of administration of the PIP statute.[4]

It should be no surprise that our application of the principles for the construction of the PIP statute, *ante* at 115, yields a result which is fully consonant with the legislative history of *N.J.S.A.* 39:6A–4. In the original version of the no-fault insurance act, *L.*1972, *c.* 70, section 4(d) provided for benefits to be paid to a surviving spouse only if the spouse was "dependent upon the deceased for such income." However, the survivor benefits statute was amended into its present form by *L.*1972, *c.* 203, § 3, and the requirement of dependency was eliminated. Although the history of the amendment is not explicit as to the rationale for the revision, it can be surmised that the Legislature amended *N.J.S.A.* 39:6A–4(d) because it believed that disputes concerning whether a surviving spouse was dependent upon a deceased would undesirably lead to judicial clutter, contrary to the stated goal of prompt payment of claims. It thus modified and clarified the statutory language in order to simplify the administration of this section of the Act.

and wife would be covered by this section of the PIP statute. *Cf. Kozlowski v. Kozlowski*, 80 *N.J.* 378 (1979) (quasi-marital agreement by cohabiting couple may be enforceable).

[4]The Estate offers its own version of a bright line test, *viz.*, a spouse who resides in the household of the deceased. It draws upon language in *N.J.S.A.* 39:6A–4 which requires every automobile liability insurance policy to provide "coverage ... to the named insured and members of his family residing in his household" and a regulation defining the "named insured" to whom additional coverage must be offered under *N.J.S.A.* 39:6A–10 as "the person[s] ... named in the declaration of the policy and ... the spouse if a resident of the same household." *N.J.A.C.* 11:3–7.1.

Read in context, the cited language, as recognized by the lower courts, defines those individuals to whom coverage must be extended and does not deal with the problem of who may receive benefits if the person covered has been precluded from recovery due to death.

■ To the extent that there may be residual concerns as to the equities of compensating the spouse, rather than the children or the Estate, under the facts of a particular case, we need only note that it is the Legislature's prerogative to make such choices as between competing objectives and to advance what it perceives to be the greater good by the passage of clear, easily administered legislation, even when such a definitively-drawn statute might lead to an apparently inequitable result in a given case. *Cf. Dominion Hotel v. Arizona,* 249 *U.S.* 265, 268, 39 *S.Ct.* 273, 274, 63 *L.Ed.2d* 597, 598 (1919) (Holmes, J.) (In enacting legislation, a legislative body does not violate the equal protection clause by refusing to cover all eventualities in that it may refuse to act where "the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact"); Accord, *Vornado Inc. v. Hyland,* 77 *N.J.* 347, 353 (1978), app. dism. 439 *U.S.* 1123, 99 *S.Ct.* 1037, 59 *L.Ed.2d* 84 (1979); *Two Guys from Harrison, Inc. v. Furman,* 32 *N.J.* 199, 218 (1960); *N.J. Restaurant Assn. v. Holderman,* 24 *N.J.* 295, 300–301 (1957). Thus, we reiterate that an individual must be considered a "surviving spouse" for the purposes of the statute until a conclusive determination of divorce has been reached.

### III

■ Under the rule enunciated, Edward McGrory is the surviving spouse of Elaine Skolny for the purposes of the survivor benefits statute.[5] Skolny and McGrory remained legally married as of the date of her tragic accident—the entry of the

---

[5]The Estate has argued that the insurance policy language leads to a contrary result. We disagree. We view the language as similar in meaning to the statute, and, in fact, the policy parrots the statutory language to a significant extent. Of course, an insurance contract that contravened our statutes would be contrary to public policy and unenforceable as a matter of law. See, *e. g., Motor Club Fire & Casualty Co. v. N.J. Manu. Ins. Co.,* 73 *N.J.* 425, 435–436 (1977), *cert.* den. 434 *U.S.* 923, 98 *S.Ct.* 402, 54 *L.Ed.2d* 281 (1977).

default prior to death notwithstanding. As noted by the Appellate Division, "the judicial acts which remained to be performed (before an official divorce could be granted) were more than non-discretionary recordation of a previous determination of record. Even had decedent survived, there would have been no divorce unless and until a trial had taken place and the necessary proofs submitted."

The Appellate Division judgment is affirmed.

PASHMAN, J., concurring.

It was Justice Holmes who said, "if it is a bad rule, that is no reason for making a bad exception to it." *Ayer v. Philadelphia & Boston Face Brick Co.*, 159 *Mass.* 84, 88, 34 *N.E.* 177, 178 (1893). This is why I feel compelled to concur in the judgment of the Court, although my inclinations are otherwise. The Court fails to acknowledge adequately the unfairness that can result because of the way the Legislature wrote the PIP survivor benefits provision, *N.J.S.A.* 39:6A-4(d).

The parents of decedent Elaine Skolny, who are the co-administrators of her estate, have seen their young daughter suffer through an unsuccessful marriage, have lived with the anguish and pain of her death in an auto accident, and must now watch as her undeserving ex-husband, Edward McGrory, reaps a $23,-000 windfall by her death. I believe the Legislature failed to consider such a situation when it enacted the survivor benefits provision of the PIP statute. While I agree with the essentials of the Court's opinion, our judgment must be explained in different terms lest the Court's reluctance to discuss the inequities inherent in the statute be taken as acquiescence in them.

Although the parties remained legally married until Elaine Skolny's death, in practical terms the marriage lasted for only nine months, from August 1974 to May 1975 when the couple separated. No children were born of the marriage. Following the separation, Elaine Skolny resumed the use of her maiden name and moved back into the home of her parents and brother

and sister. She lived there until her death, contributing to the household expenses. In January 1976, she executed a holographic will, ultimately admitted to probate, expressing specifically an intent to prevent her estranged husband from sharing in any benefits under her estate. In July 1976, more than a year after the separation, she purchased an auto insurance policy from Allstate Insurance Company. This policy was issued in her maiden name; Edward McGrory was not included as a named insured or mentioned in any other way.

On March 8, 1977 Elaine Skolny filed a complaint for divorce on the ground of 18 months' separation with no reasonable prospect for reconciliation. She did not seek alimony or equitable distribution in her complaint, making specific demands only for dissolution of the marriage and resumption of her maiden name. McGrory failed to answer the complaint and a default was entered against him in April 1977. The divorce trial was set for June 14, 1977, but just ten days prior to it Elaine Skolny was killed in an auto accident, before her marriage could be legally dissolved by a court. McGrory remarried within weeks of her death, in August 1977.

Her estate sought recovery of all PIP benefits under the auto insurance policy. It also notified McGrory of his potential interest in those benefits. Subsequently, Allstate brought this interpleader action to determine whether it should make the PIP payments to the estate or to McGrory. Under our decision today, the estate will retain the $1,000 it has already been paid by Allstate for funeral expenses; McGrory will receive the remaining $23,000 income continuation and death benefits.

The unfairness of the outcome cannot be denied; yet we must reach this result because the statute leaves no room for the intervention of equity in a way that will not bring about unfairness in other cases.

The statute establishes a clear succession for payment of survivor benefits:

to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer. [*N.J.S.A.* 39:6A–4(d)]

As originally enacted, the statute allowed only dependent spouses and children to recover survivor benefits. *L.*1972, *c.* 70, § 4(d). The dependency prerequisite was later deleted. *L.*1972, *c.* 203, § 3. The Legislature probably believed that requiring the beneficiary to prove dependency would hinder the goal of the PIP statute of providing prompt payment of benefits without factual disputes and without the need for judicial intervention.

The resulting statute, therefore, requires that a beneficiary prove only that he was a spouse or child of the deceased insured. While this simplified scheme aids the goal of prompt, uncontested payments, it takes no account of the many turns which family relationships can take. A person's status as a spouse or child of a deceased insured may have little relation to whether he should receive survivor benefits under an insurance policy. For example, an insured widower who has supported his elderly sister for a number of years may understandably desire that in the event of his death in an auto accident, his dependent sister would enjoy the benefits. If those benefits belonged to his estate, he could include a provision in his will to carry out this desire. But under the PIP statute, a surviving child of the insured, even if he had not had any contact with the insured for many years, would have a superior right to the insurance benefits. The statute treats all claims as if they grew out of the "typical family" situation, where spouses mutually share in each other's income and support their minor, dependent children. This indiscriminate treatment of all claims makes the survivor benefits provision the "bad rule" of Justice Holmes' aphorism.

Any reasonable attempt, however, to apply equitable principles to this case and thus allow the estate to receive the survivor benefits would create the troubling "bad exception." We cannot construe the statute as enacted to include a dependency

requirement.[1]  Not only would such a construction be contrary to the legislative history of the statute but it would also obstruct the goal of prompt payment in the "typical family" situation. We cannot read a requirement into the statute that beneficiaries must reside with the decedent.  Such a reading would unjustifiedly qualify the actual terms of the statute and would unduly limit the eligible class of beneficiaries.

Finally, we cannot define the word "spouse" in the statute to mean only a spouse until marital breakup, as defined by our cases relevant to equitable distribution in divorce actions, *e. g.*, *Brandenburg v. Brandenburg*, 83 *N.J.* 198 (1980); *Painter v. Painter*, 65 *N.J.* 196 (1974).  As the Court observes, restricting the definition of "spouse" in this way might inject matrimonial disputes into claims for insurance benefits, contrary to legislative intent.  *Ante* at 116–117.  While I do not agree that the resolution of such factual disputes would necessarily hinder the goal of prompt payment any more than resolution of the kinds of factual disputes the Court accepts in *Gambino v. Royal Globe Insurance Co.*, 86 *N.J.* 100 (1981), also decided today, I believe that such a restricted definition of "spouse" would harm other, more deserving spouses.  It would prevent recovery of survivor benefits by a dependent spouse who, although living separately and awaiting a divorce judgment, relies on the income of the insured for economic support.  The Legislature might reasonably intend that such a dependent spouse whose source of support has ceased with the death of the insured supporting spouse would receive mandatory insurance compensation.

Left with no acceptable construction of the statute that would serve the ends of equity not only in this case but in other cases as well, we are forced to apply the statute mechanically as the Legislature wrote it and without regard to who should in fairness receive the benefits.

---

[1]The parties stipulated that McGrory received no benefits from Elaine Skolny after their separation and therefore was not a dependent spouse.

Yet I believe that the Legislature could have designed a more equitable scheme for entitlement to PIP survivor benefits if it had considered a case such as this. As the law now stands, the State compels all car owners to purchase insurance, *N.J.S.A.* 39:6A–3, and further dictates who can benefit from that insurance. To the extent that the beneficiaries designated by the State are somehow entitled to the benefits under principles of equity, I find no fault with the legislative scheme. But when a statute indiscriminately assigns benefits contrary to the wishes of the person purchasing the insurance and does so without regard to whether the beneficiary might be deserving, the Legislature ought to reconsider its choices.[2] Because the options do belong to the Legislature rather than this Court, we must allow a husband, who should receive nothing under all principles of equity, to gain a substantial reward upon the death of his estranged wife.

PASHMAN, J., concurring in the result.

---

[2] To illustrate, the statute could have provided that a spouse or child would be entitled to survivor benefits if he was either a resident of the same household *or* a dependent of the deceased insured. A showing of residency in the same household is neither burdensome nor antithetical to the goals of the PIP statute. Persons protected by the PIP coverage are defined with reference to whether they reside with the insured. *See N.J.S.A.* 39:6A–4. Such a residency requirement would allow beneficiaries in the "typical family" situation to recover promptly and without raising factual disputes. The dependency requirement as an alternative to residency would be somewhat more burdensome but would apply only to spouses and children living separately from the insured. The additional burdens would be justified by the prospect of fairer distribution of the insurance benefits.

A second option for the Legislature is to define "spouse" restrictively, according to the definition of the duration of marriage in our equitable distribution cases. As I have said, this option might work a hardship on dependent spouses, but their recourse might be in the matrimonial courts, as with others whose source of support has ceased with the death of the supporting spouse. *Cf. Olen v. Melia*, 141 *N.J.Super.* 111 (App.Div.1976) (equitable distribution following death of one of the parties in a divorce action).

*For affirmance*—Chief Justice WILENTZ and Justices SUL-LIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.