ALAN R. SCHMOLL, GENERAL ADMINISTRATOR AND AD-MINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF CORNELIUS PAYNTER, SR., DECEASED, PLAINTIFF-APPELLANT, v. ROSHIER G. CREECY, DEFENDANT-RESPONDENT.

Argued May 19, 1969—Decided June 26, 1969.

*Mr. Walter Gollub* argued the cause for appellant.

*Mr. Charles A. Cohen* argued the cause for respondent (*Messrs. Kisselman, Devine, Deighan and Montano,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. The principal question is whether illegitimate children may recover damages for the wrongful death of their natural father.

Decedent was married in 1955 and had two children by that marriage. In 1956 he separated from his wife. Thereafter he lived with another woman ostensibly as her husband and had by her five children, all of whom were members of his household when he died in 1966. On motion the trial court held the illegitimate children could not recover damages for the wrongful death of their father despite their dependency upon him. The Appellate Division affirmed, 104 *N. J. Super.* 126 (1969), and an appeal was taken to us as of right, *R. R.* 1:2–1(a), because of the constitutional issue, whether the denial of relief to these children because of their illegitimacy offends the equal protection clause of the Federal Constitution.

I

The wrongful death action was unknown to the common law and hence is the creature of statute. Our wrongful death statute has always identified the beneficiaries of the action by referring to the statute controlling distribution of intestate personalty. Thus the first wrongful death act (*P. L.* 1848, *p.* 151) provided that the action "shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate." In its present form the death act, *N. J. S. A.* 2A:31–4, reads:

"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate

personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered."

 We are thus referred to the statutes relating to the distribution of intestate personalty to ascertain the beneficiaries of a death action. At common law an illegitimate child could not inherit from its mother or its putative father. *Hammond v. Pennsylvania R. R. Co.*, 31 *N. J.* 244, 251 (1959). The rule was modified by *N. J. S. A.* 3A:4–7 in these terms:

"For the purpose of descent and distribution under this chapter to. through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter."

Accordingly the illegitimate child takes from and through its mother, but not from or through the father unless legitimated in accordance with this provision.

Reading the wrongful death act in the light of the statute concerning distribution of personal property, the Appellate Division concluded that an illegitimate child could recover for the wrongful death of its mother but not for the wrongful death of its natural father unless legitimated under *N. J. S. A.* 3A:4–7. See *Di Medio v. Port Norris Express Co.,*

*Inc.,* 71 *N. J. Super.* 190 (*Law Div.* 1961), and Annotation, 72 *A. L. R. 2d* 1235 (1960).

## II

We agree with the Appellate Division's reading of the wrongful death statute, but we are unable to agree that the statute, thus read, is compatible with the equal protection clause as construed in *Levy v. Louisiana,* 391 *U. S.* 68, 88 *S. Ct.* 1509, 20 *L. Ed. 2d* 436 (1968), and *Glona v. American Guarantee & Liability Insurance Company,* 391 *U. S.* 73, 88 *S. Ct.* 1515, 20 *L. Ed. 2d* 441 (1968).

Those cases involved the law of Louisiana. In *Levy* illegitimate children sought to recover for the wrongful death of their mother, and in *Glona* a mother sought to recover for the wrongful death of her illegitimate child. The State court had construed the wrongful death statute to protect only a legitimate child and the mother of a legitimate child. The Supreme Court held that, so construed, the statute would deny equal protection of the law.

It is argued that the case before us is different because (1) our death act is related in terms to a statute dealing with the devolution of property and *Levy* and *Glona* do not touch that topic, and (2) those cases deal only with the relation of an illegitimate child and its mother.

The first proposition may be disposed of quickly. There are of course differences between a wrongful death statute and an inheritance statute. A wrongful death statute itself determines who shall benefit, and the decedent has no voice in the matter. On the other hand, an inheritance statute embodies no more than the presumed intention of decedents who do not express their wish. It may therefore be urged that our inheritance statute does not generate a distinction between legitimate and illegitimate children but merely reflects the probable intent of individuals who are themselves constitutionally free to draw that line and who presumptively subscribe to the view of the statute by omit-

ting to direct otherwise by will. Then, too, at least in the case of a male decedent, there is fear of spurious claimants, a problem more formidable in estate situations than in wrongful death actions in which the amount of the recovery will depend critically upon the amount of pecuniary injury shown.

One court has found that the "reasoning of *Levy*" required the conclusion that the illegitimate children must be permitted to share with their mother's legitimate children in the estate of a legitimate child. *In re Estate of Jensen,* 162 *N. W. 2d* 861, 876–879 (*N. D. Sup. Ct.* 1968). We find it impossible to tell from *Levy* and *Glona* whether their thesis will embrace the devolution of intestate property, especially of the putative father. But we need not explore that question, for although the Legislature has referred to the statute of distribution to identify the beneficiaries under the wrongful death statute, the beneficiaries take, not under the statute of distribution, but under and by virtue of the wrongful death statute. It has long been settled that the recovery under the wrongful death statute forms no part of the estate of the deceased.[1] *Gottlieb v. North Jersey Street Ry. Co.,* 72 *N. J. L.* 480, 484–485 (*E. & A.* 1906)*; Soden v. Trenton and Mercer County Traction Co.,* 101 *N. J. L.* 393, 398 (*E. & A.* 1925). The proceeds reach the beneficiaries because the wrongful death act so provides, and unlike the decedent's own estate, the proceeds of the death action are so distributed without regard to his last will and testament.

Thus the case before us does not involve the question whether the Legislature may say that only legitimate children may take the intestate property of the parent. The wrongful death statute involves something quite different. It

---

[1] The cause of action for wrongful death and the deceased's own cause of action for personal injuries are separate and distinct claims. *Soden v. Trenton and Mercer County Traction Co.,* 101 *N. J. L.* 393, 398 (*E. & A.* 1925). The decedent's personal claim is an asset of his estate; the death claim is not.

provides a remedy for "the pecuniary injuries resulting" to the designated relatives because of the death of the decedent, *N. J. S. A.* 2A:31–5, and the question therefore is whether it is arbitrary to provide a remedy for a legitimate child and to deny a like remedy to an illegitimate child who sustained precisely the same tortious injury.

The subject matter of our statute is thus the same as the subject matter in *Levy*, and that case applies unless defendant is correct in his second proposition that it deals only with the relation of the mother and child. We do not think *Levy* can be so confined.

The majority opinion in *Levy* reads in part (391 *U. S.*, at 72, 88 *S. Ct.*, at 20 *L. Ed. 2d*, at 439):

> "Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would.5"

In footnote 5 the Court pointed out that under Louisiana law both parents are under a duty to support their illegitimate child.[2] Although the passage we just quoted speaks of the mother and her child, the underlying principle must be that when children suffer tortious injury by the wrongful death of a parent, their legitimacy is irrelevant to the tortfeasor's liability, and hence it is invidious to grant a remedy to the legitimate and withhold it from the illegitimate child. Under that thesis, it can be of no logical moment whether that parent was the mother or the father.

---

[2] Although *Levy* thus noted that the deceased was obligated by statute to support the child, *Levy* has been read to entitle an illegitimate child to sue his natural father for support, *R. v. R.*, 431 *S. W. 2d* 152 (*Mo. Sup. Ct.* 1968), and to receive from the father the same measure of support as a legitimate child, *Storm v. None*, 57 *Misc. 2d* 342, 291 *N. Y. S. 2d* 515 (*Fam. Ct.* 1968). On the other hand, it was held in *Baston v. Sears*, 15 *Ohio St. 2d* 166, 239 *N. E. 2d* 62 (*Sup. Ct.* 1968), by a vote of 4 to 3, that a support action could not be brought against the putative father in the absence of a statute, notwithstanding *Levy* and *Glona*.

Hence the principle of *Levy* and *Glona* must equally apply when the vehicle of the injury to the illegitimate child is the death of his father. That view of *Levy* was taken in *Hebert v. Petroleum Pipe Inspectors, Inc.,* 396 *F.* 2d 237 (5· *Cir.* 1968), and the same view of the equal protection clause was expressed in *Armijo v. Wesselius,* 73 *Wash.* 2d 721, 440 *P.* 2d 471 (*Sup. Ct.* 1968), shortly before *Levy* and *Glona* were decided.

In our State by statute the father is equally liable with the mother for the support of the illegitimate child. *Hammond v. Pennsylvania R. R. Co., supra,* 31 *N. J.,* at 252–253. Thus the illegitimate children here involved were dependents of their natural father both in law and in fact. The injury they sustained is indistinguishable from the injury which would have been theirs if they were born to him in wedlock. It would be a denial of equal protection to refuse them a remedy available to a legitimate child.

### III

The remaining question is whether the wrongful death statute may be read to protect the illegitimate child or must fall in its entirety because of this constitutional defect.

Defendant contends the judiciary cannot enlarge the reach of a statute, for that is solely a legislative function. The proposition is obvious enough, and it is equally true that a court may not restrict the scope of a statute. But neither proposition is involved when the question is whether a statute must fall because of a constitutional defect. Rather the question is whether the Legislature would want the statute to survive, and that inquiry cannot turn simply upon whether the statute, if adjusted to the constitutional demand, will cover more or less than its terms purport to cover. Although cases may be found which seem to speak in such mechanical terms, we think the sounder course is to consider what is involved and to decide from the sense of the situation whether the Legislature would want the statute to succumb. See 2

*Sutherland, Statutory Construction (Horack 3d ed.* 1943) § 2412, *p.* 189.

So, for example, in *Utah Power & Light Co. v. Pfost,* 286 *U. S.* 165, 185, 52 *S. Ct.* 548, 76 *L. Ed.* 1038, 1048– 1049 (1932), the Court said it could not conclude the Legislature would want an important revenue act to fall merely because some stated exemptions were invalid. This case was cited with approval in *Rutgers Chapter, &c. v. New Brunswick,* 129 *N. J. L.* 238, 245 *(Sup. Ct.* 1942), affirmed o.b., 130 *N. J. L.* 216 *(E. & A.* 1943), where an invalid exclusion from a tax exemption provision was held to invalidate the exemption provision in its entirety.

And so here the question is whether the Legislature was so intent upon denying protection to illegitimate children that it would prefer the wrongful death statute to be totally void. We think the question answers itself. Nor are we persuaded from that view by the several attempts, mentioned in the opinion of the Appellate Division, to amend the wrongful death statute to cover illegitimate children. Legislative inaction can mean only that the Legislature did not act. It does not affirmatively reflect the view that such children should be excluded, and of course could not reflect a view upon the issue which confronts us, *i. e.,* whether the wrongful death act should also cover illegitimate children rather than fail wholly in its primary aim to provide the family of the victim of a tort with a remedy for resulting pecuniary injury. Indeed, the question as to the intent of the Legislature that adopted the wrongful death statute is a judicial question as to which neither the action nor inaction of a subsequent Legislature can be dispositive.

Despite the failure of the Legislature to amend the wrongful death act, the whole course of legislative action bespeaks a purpose to better the lot of the illegitimate child and especially with respect to a recognition and protection of the right in such children to look to both their natural parents for support. Hence in *Hammond, supra,* 31 *N. J.* 244, we found that it would not offend our State policy so to con-

strue "children" in the Federal Employers' Liability Act, 45 *U. S. C. A.* § 51, as to entitle illegitimate children to recover compensation for the death of their natural father. We said (*pp.* 252–253):

"Hence it is clear that at common law a bastard was not *nullius filius* for all purposes. Nor has our Legislature so denounced him. Even with respect to inheritance, the Legislature almost a century ago permitted the illegitimate child to inherit from the mother. *Voorhees v. Sharp*, 63 *N. J. Eq.* 216 (*Prerog.* 1901). Today an illegitimate child is treated the same as if the legitimate child of the mother, entitling him to take also from his maternal kindred including ancestors, descendants and collaterals, and if his parents marry after his birth and recognize and treat him as their child, he is deemed to have been their legitimate child for the purpose of descent and distribution. *N. J. S.* 3*A*:4–7; see also *R. S.* 9:15–1. We need not consider the extent to which the fiction may have intruded into areas alien to the one for which it was created, for with respect to the matter here pertinent, to wit, support, the biological truth has long·prevailed in this State. An act for the maintenance of bastard children, adopted February 26, 1795 (*Paterson's Laws of New Jersey, p.* 152) charged both the mother and reputed father with the support of the child. The English law so charged the putative father at the time of the separation of the Colonies. See *Borawick v. Barba*, 7 *N. J.* 393 (1951); 1 *Blackstone, Commentaries*, 458. Under our present statutes, welfare representatives may press an action against the father if the child is or is likely to become chargeable to the municipality. *N. J. S. A.* 9:17–1 *et seq.* Further, and wholly apart from possible impact upon the relief rolls, *R. S.* 9:16–2 provides broadly:

'A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock.'

*N. J. S. A.* 9:16–3 authorizes proceedings to enforce that obligation for the benefit of the child. *Kopak v. Polzer*, 4 *N. J.* 327, 331 (1950); *Hall v. Centolanza*, 28 *N. J. Super.* 391 (*App. Div.* 1953). Specifically pertinent is the fact that in dealing with the very area embraced in the Federal Employers' Liability Act, to wit, compensation for industrial death, the Legislature expressly included 'illegitimate children' within the category of 'dependents' entitled to benefit. *N. J. S. A.* 34:15–13; *Morgan v. Susino Construction Co.*, 130 *N. J. L.* 418 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 329 (*E. & A.* 1944).

Whatever policy considerations may still support the rules relating to inheritance by illegitimate children from their natural father, they do not obtain in the critical area of support and wrongful deprivation of it by industrial death. Enforcement of the congressional purpose to compensate defendants by including illegitimate children therein will not disturb our domestic scene. On the con-

trary, it will further the policy of our statutes for the benefit of the infants themselves as well as for the protection of public funds."

We therefore conclude that the constitutional difficulty is properly resolved by holding that, for the purpose of the wrongful death statute, illegitimate children shall be deemed to be children of their natural parents.

## IV

Plaintiff seeks to recover funeral expenses. *N. J. S. A.* 2*A*:31–5 was amended, effective February 27, 1968, to include those expenses in the recoverable damages. *L.* 1967, *c.* 307, § 1, *pp.* 1031–1032. The death here involved occurred prior to that enactment. The Appellate Division correctly held the item may not be recovered.

The judgment is reversed, except as to funeral expenses, and the matter remanded for trial in accordance with this opinion.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.