180 N.J. Super. 620 (1981)
436 A.2d 118
MARGARET CASSANO, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF RONALD CASSANO AND JANE STRUBLE, PLAINTIFFS,
v.
LAWRENCE R. DURHAM, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
Decided May 29, 1981.
*621 Frederic J. Rossi for plaintiffs (Wegner & Wegner, attorneys).
George O. Foster for defendant (Fiorello, Moraff & Foster, attorneys).
SCHWARTZ, J.S.C.
The issue in this case is whether one who maintains a "live-in" relationship with another without the benefit of a marital ceremony may recover under the Wrongful Death Act (N.J.S.A. *622 2A:31-1 et seq.) for pecuniary loss sustained by reason of the partner's accidental death.
N.J.S.A. 2A:31-4 provides that the amount recovered in proceedings under this statute "shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent."
In this case the partner had lived with decedent for seven years and they intended to get married. The court is asked to permit her to recover for her pecuniary loss as if she qualified as a "surviving spouse" under N.J.S.A. 3A:2A-34 of the intestacy statute.
The Legislature has plenary power over the devolution of title and the distribution of the intestate's property. In re Holibaugh, 18 N.J. 229, 235 (1955). Did it intend that decedent's cohabitant would become seized of an estate of inheritance upon decedent's death?
In Allstate Ins. Co. v. Skolny, 86 N.J. 112 (1981) the court interpreted the no-fault insurance statute, which provided for payment of surviving benefits to "the surviving spouse" (N.J.S.A. 39:6A-4(d), as intended to apply to "the long standing, clear and commonly accepted definition of a spouse that recognizes that once a person is legally married, that person remains a spouse until the marriage is legally terminated". Thus, the mere filing of a complaint for divorce and the entry of a default judgment against the nonresponding spouse, did not alter the status of the survivor as the "surviving spouse."
However, the court stated in a footnote:
We are not presented with the issue and do not propose to decide whether a couple that has never been married, but has openly cohabitated as husband and wife would be covered by this section of the PIP statute. Cf. Kozlowski v. Kozlowski, 80 N.J. 378 (1979) (quasi-marital agreement by cohabitating couples may be enforceable).
The "palimony" cases which have been decided in various states, including ours in Kozlowski, supra, have not been of aid to the court because they were not determined on the basis of *623 the status of the live-in partner but on entirely contractual grounds.
In Wood v. State Farm Mutual Automobile Ins. Co., 178 N.J. Super. 607 (App.Div. 1981) the court held that an economically independent companion who lived in the same home as the insured for three and one-half years before he suffered a vehicular accident and who married her almost two years later, had not been a member of her "family" residing in her household and therefore was not entitled to coverage under the personal injury protection provision of the insurance policy.
But even when a claimant relies upon the companion for support, the issue of dependency is irrelevant since the right of the spouse to partake of the benefits of the Wrongful Death Act is not conditioned on dependency. Turon v. J. & L. Construction Co., 8 N.J. 543, 555 (1952). In this respect, it differs from the Worker's Compensation Act in which our Supreme Court in Parkinson v. J. & S. Tool Co., 64 N.J. 159 (1974) recognized as a proper petitioner a live-in partner who had previously been married to and divorced from the decedent and who became entitled to the benefits of that statute having proved dependency upon the decedent who suffered death during and arising out of employment.
In Bulloch v. United States, 487 F. Supp. 1078 (1980) the U.S. District Court recognized the right of recovery for loss of consortium as residing in one who had intended to resume cohabitation with the injured party after having been previously married to and divorced from the injured party. The court reasoned that the intended cohabitant suffered as much as a consequence of the injuries suffered by her mate as a spouse did.
The court concluded that since the right of consortium is judge-made law, the court could readily expand it. The law of intestacy, however, is statutorily created and not subject to judicial amendment.
While the succession statute did not then specifically make provision for illegitimate children to take from and through the *624 father, the Supreme Court in Schmoll v. Creecy, 54 N.J. 194 (1969), nevertheless upheld the right of such illegitimate child to be included in the class of persons entitled to take under this statute in order to qualify as a beneficiary under the Wrongful Death Act since the denial of relief to children because of their illegitimacy would offend the Equal Protection Clause of the Federal Constitution.
Is it arbitrary to provide a remedy for a surviving spouse and to deny a like remedy for a live-in companion who may equally suffer as the result of the tort? There is no constitutional impediment to the legislative determination to designate one, who has entered into the bonds of matrimony with decedent, as a beneficiary under the Wrongful Death Act among those who will inherit under the intestacy statute. That is solely a legislative function and the court cannot enlarge the reach of the statute.
Changed attitudes toward marriage are temporal, reflecting the temper of the times as they may still relate to the permissiveness of the 1960s and the early '70s. But the reaction to freedom of thought as it extends to consensual sexual conduct outside of the family tradition has not found ready acceptance by the Legislature in areas where the stability and responsibility of family life may be affected.
It was in 1939 that the Legislature determined (now N.J.S.A. 37:1-10) that no marriage subsequently contracted shall be valid unless the contracting parties obtained a marriage license and the marriage was legally solemnized. This was an expression of public policy which precluded common law marital relationships acquired through cohabitation and matrimonial repute, and the statute has not been amended.
The intestacy statutes governing descent and distribution of the property of an intestate related to hereditary succession. Since the interpretation of the statutes in our earlier cases, i.e., Reese v. Stires, 87 N.J. Eq. 32 (Ch. 1917), and until the repeal of N.J.S.A. 3A:4-2 as of September 1, 1978, even the spouse of a *625 decedent did not have the capacity of a lineal descendant with respect to the realty whereof decedent was seized at the time of his death.
However, the Legislature adopted N.J.S.A. 3A:2A-34 in 1977, effective September 1, 1978, clearly making provision for surviving "spouses" to inherit an intestate share of the decedent's property. It is significant that despite the attraction and convenience of live-in arrangements to a segment of the population, provision was not made for unmarried cohabitants.
The Legislature made provision for inheritance by other persons, such as children, parents and others within degrees of kinship. It excluded persons who failed to survive the decedent by 120 hours. If the statute was designed to accommodate unmarried companions, such legislative intent would have found expression in the law. Even illegitimate children and adopted minor children were recognized (N.J.S.A. 3A:2A-41) to accommodate a change in public policy.
Was it a goal of the Legislature to provide under N.J.S.A. 3A:2A-34 b, for example, that "if there be no issue but the decedent is survived by a parent or parents" the intestate share of a live-in partner shall be as much as "the first $50,000 plus one-half of the balance of the intestate estate"? There is no room for the application of considerations of equity to the interpretation of this statute, so that where the live-in arrangement was of a long duration, the cohabitant would be entitled to inherit, but an overnight companion would not. The fact that the Legislature has condemned "common law" types of relationship as "absolutely void" (N.J.S.A 37:1-10) should supply the answer.
The family has been the genesis of our society since the birth of civilization, and the laws of inheritance were intended to buttress the stability and continuance of the family unit. The preservation of familial law is so essential that where questions of inheritance, property, legitimacy of offspring and the like are involved, an adherence to conventional doctrine is demanded. Dawson v. Hatfield Wire & Cable Co. 59 N.J. 190, 197 (1971).
*626 Since the live-in plaintiff cannot be classified as a "surviving spouse" under the legislative designation in the intestacy laws, and the Wrongful Death Act was intended to apply for the exclusive benefit of persons eligible to inherit under the succession provisions of the statute, the motion for summary judgment striking the claim of plaintiff shall be granted.