215 N.J. Super. 461 (1987)
521 A.2d 1380
BARBARA SYKES, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX FOR ESTATE OF WILLIAM SYKES AND BARBARA SYKES, INDIVIDUALLY, PLAINTIFFS,
v.
ZOOK ENTERPRISES, INC., AND MCKESSON CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
January 9, 1987.
*462 Edward G. D'Alessandro for plaintiffs (D'Alessandro, Sussman, Jacovino & Mahoney, attorneys).
George R. Hardin, for defendant Zook Enterprises, Inc. (Bumgardner, Hardin & Ellis, attorneys).
*463 Joseph R. McDonough for defendant McKesson Corporation (Carpenter, Bennett & Morrissey, attorneys, John P. Dwyer, of counsel, Joseph R. McDonough on the brief).
VILLANUEVA, J.S.C.
This is a motion for summary judgment made by defendant, McKesson Corporation[1] to dismiss all claims asserted by plaintiff, Barbara Sykes, individually and in her own behalf.
The issue is whether a "purported wife" may recover damages either for loss of consortium or for decedent's alleged wrongful death when she was never his lawful spouse.
The court holds that she cannot recover (1) for loss of consortium because there was no marriage relationship; or (2) for her death claims because she falls outside any applicable classification under N.J.S.A. 2A:31-4 et seq.
Plaintiff, Barbara Sykes commenced this action for damages for personal injuries and wrongful death sustained by her decedent, William Sykes. Mr. Sykes was allegedly injured while working for McKesson Envirosystems Company (a former defendant whose case was dismissed). His death allegedly resulted from the injury he sustained.
While Barbara Sykes sues as "the Administratrix ad Prosequendum and General Administratrix of the Estate of William Sykes," she also demands judgment for damages as a plaintiff "individually." She seeks these damages individually as "the purported wife of the decedent" for having been "deprived of the services and consortium of the decedent between the dates of October 10, 1982 and November 5, 1982." She also seeks recovery under the Wrongful Death Act, N.J.S.A. 2A:31-1 et seq., as surviving  "next of kin" and "purported wife" of decedent.
*464 Barbara Sykes and William Sykes held themselves out as married, but were never married in a formal or religious ceremony; they owned certain property in common as "husband and wife"; they resided together and lived as husband and wife; Barbara Sykes bore four children to William Sykes and they and their offspring resided together; Barbara Sykes was named as spouse and beneficiary on a policy of insurance of William Sykes; Barbara Sykes was dependent on William Sykes. Barbara Sykes and William Sykes had lived together for 24 years since Barbara Sykes was 18-years-old. Barbara Sykes gave birth to William Sykes' namesake, William Lewis Sykes, Jr., and one of their three daughters was named after Barbara Sykes and Barbara Sykes' sister, Ann. All of the children in common were given the surname "Sykes," as is the usual practice in the case of children born in wedlock.
However, Barbara Sykes did not list herself as a spouse, heir or next of kin in her complaint for administration filed in the Surrogate's Court. Only the four children were listed as next of kin and plaintiff swore that there were "no other heirs or next of kin known to the plaintiff." Decedent William Sykes was also described as "single  never married." Notwithstanding those sworn representations, plaintiff proceeded to allege in this action, brought pursuant to letters of administration issued to her, that she was "next of kin" and "purported wife" of William Sykes.
Although they were never married, plaintiff Barbara Sykes seeks money damages for loss of consortium, society, care and comfort, personal services and companionship arising out of the injuries and eventual death of William Sykes.
In New Jersey an unwed companion or live-in cohabitant has no right to recover damages for alleged loss of consortium or as a claimant under the Wrongful Death Act, N.J.S.A. 2A:31-1 et seq.
Claims for loss of consortium have been defined as follows:

*465 A wife is entitled to the services of her husband in attending to his household duties, to his companionship and comfort and to his consortium, that is, marital relations with him. She is entitled to fair and reasonable compensation for any loss or impairment of her husband's services, society or consortium because of injuries sustained by him as a proximate result of defendant's wrongdoing. [Zalewski v. Gallagher, 150 N.J. Super. 360, 372 (App.Div. 1977) (citing Ekalo v. Constructive Service Corp., of America, 46 N.J. 82 (1965))].
In New Jersey, a claim for loss of consortium must be founded upon the marriage relation. Leonardis v. Morton Chemical Co., 184 N.J. Super. 10 (App.Div. 1982); Childers v. Shannon, 183 N.J. Super. 591 (Law Div. 1982) (marriage at time of injury is a prerequisite and affianced status is not a sufficient relationship). There is no right to recovery where there was no formal marriage. Id. at 595. Compare Stahl v. Nugent, 212 N.J. Super. 340 (Law Div. 1986), where the court held that when plaintiffs were engaged to be married at the time of the injury, and did in fact marry shortly thereafter, any proved loss of consortium which the newlywed husband sustained from the date of the marriage should not be barred. It was not a case in which a relationship other than marriage was offered as the basis for a claim of loss of consortium. Looking principally to Mead v. Baum, 76 N.J.L. 337 (Sup.Ct. 1908), the court concluded that "any proved loss of consortium which the newlywed husband sustained from the date of the marriage should not be barred by a legal catch-phrase." 212 N.J. Super. at 341. Even there, the court would only permit the claim to postdate the actual marriage. In the instant case, however, plaintiff seeks a further doctrinal extension. There was no eventual marriage here nor any evidence whatsoever of any intent to ever marry which would support the asserted analogy to Stahl. Indeed, the facts demonstrate the absence of such intent, as decedent William Sykes was subjected to a long-standing court order for support in the years before his 1982 injuries.
From an analytical standpoint, moreover, Stahl may not accurately represent the current state of New Jersey law. While the Stahl court focused its departure from precedent in an attack on Childers v. Shannon, supra, the court made no *466 apparent reference to the Appellate Division's long-standing precedent in Leonardis v. Morton Chemical Co., supra. The Stahl decision offers no indication that Leonardis was ever considered in reaching a plainly novel result.
The rule that a claim for loss of consortium must be based upon the marriage relationship was reaffirmed by the Appellate Division in Leonardis v. Morton Chemical Co., supra., where Judge Allcorn's one-paragraph opinion leaves no room for doubt on the issue:
The right of recovery for loss of consortium resulting to a wife by reason of an injury to her husband, is founded upon the marriage relation. Absent such relationship, the right does not exist, and thus no recovery may be had for loss thereof. Ekalo v. Construction Service Corp., 46 N.J. 82 (1965). Cf. N.J.S.A. 37:1-10; Cassano v. Durham, 180 N.J. Super. 620 (Law Div. 1981). See, also, Kozlowski v. Kozlowski, 80 N.J. 378, 387 (1979); Parkinson v. J. & S. Tool Co., 64 N.J. 159, 164 (1974). We find no merit in and decline to follow Bulloch v. U.S., 487 F. Supp. 1078 (D.N.J. 1980).[2] Accordingly, the right to recovery for loss of consortium does not inhere in a woman not married to her male consort who is injured. [184 N.J. Super. at 11]
Here, as in Leonardis and Childers, the parties lack the necessary foundation of a "marriage relation" which is the touchstone of that claim. Both decisions defined the claim in terms of a "husband" and a "wife," and not in terms of live-in companions or "purported" spouses or cohabitants. By legislative definition, common law marriages are not recognized, N.J.S.A. 37:1-10, and the same provision states that a marriage is only valid when a marriage license has been obtained and a marriage ceremony performed. In this regard, the Childers *467 court recognized the legislative and personal prerogatives attendant to the marriage relation:
Presumably, when partners wish social and legal recognition of their relationship, they marry. To accord consortium to an unmarried plaintiff is to force upon him or her a status which he or she had not, at the time of the injury, asserted; it is an ill-conceived intrusion into the private lives of individuals ... Only a Legislature responsible to the electorate should have such power. [183 N.J. Super. at 595]
Thus, plaintiff Barbara Sykes, who admits the absence of a marriage relation and styles herself only as decedent's "purported wife," has no right of recovery for such damages.
For like reasons, Barbara Sykes has no right of recovery in a wrongful death action. Cassano v. Durham, 180 N.J. Super. 620 (Law Div. 1981). The right to recover for wrongful death is a creature of statute and N.J.S.A. 2A:31-4 provides that the amount recovered in proceedings under that statute "shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent." Emphasis supplied. As the Cassano court explained, the right to recover follows the law of intestacy which "is statutorily created and not subject to judicial amendment." Since the intestacy statutes, as amended in 1978, clearly provided for surviving "spouses" to inherit an intestate share but made no provision whatsoever for unmarried or live-in companions, the court struck the claims of the live-in plaintiff; stating:
It is significant that despite the attraction and convenience of live-in arrangements to a segment of the population, provision was not made (in the 1978 amendment) for unmarried cohabitants.
The Legislature made provision for inheritance by other persons such as children, parents and others within degrees of kinship. It excluded persons who failed to survive the decedent by 120 hours. If the statute was designed to accommodate unmarried companions, such legislative intent would have found expression in the law. [180 N.J. Super. at 625]
The court reasoned that an unwed companion is not entitled to recovery for the wrongful death of her cohabitant.
It appears from Judge Schwartz' factual recitation in Cassano that no children were born of the relationship of the couple in issue. While the court was mindful of the equal protection *468 rationale of Schmoll v. Creecy, 54 N.J. 194 (1969), on the subject of illegitimate children and the Wrongful Death Act, it found that the principles were inapplicable to the facts at issue. ("There is no constitutional impediment to the legislative determination to designate one, who has entered into the bonds of matrimony with decedent, as a beneficiary under the Wrongful Death Act among those who will inherit under the intestacy statute." 180 N.J. Super. at 624).
In this action, Barbara Sykes contends that the court must allow her wrongful death claim on equal protection grounds not present in the Cassano case because a denial of Barbara Sykes' wrongful death claim would constitute a denial of equal protection to the Sykes' children.[3] The pecuniary loss which a spouse would be permitted to recover in a wrongful death action would, to a large extent, represent the present value of the estate that the couple would have been able to create and conserve over the life expectancy of the decedent, an estate which would pass, on the death of the surviving spouse, to the children of the relationship.
The question Barbara Sykes raises is whether an invidious statutory classification unconstitutionally consigns the admittedly illegitimate children of William Sykes to a lifetime supporting an ailing, hypertensive, totally disabled mother without an estate in circumstances in which legitimate children would not be so burdened. Although the Sykes' children do possess wrongful death claims, she contends that such claims do not afford them the same remedy and status which legitimate children may effectively obtain under the same statutory scheme.
*469 Since, unlike Cassano, supra, this action involves children, she wants the court to follow the admonition of the Supreme Court in Schmoll v. Creecy, supra: "It would be a denial of equal protection to refuse them a remedy available to a legitimate child." 54 N.J. at 202 (relying upon Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)). She contends it would be a denial of equal protection under the Fourteenth Amendment in this case to affix burdens to the Sykes children which would inevitably follow from a decision to deny their mother rights under the Wrongful Death Act.
Although the Wrongful Death Act nowhere suggests that death damages include amounts to support the prospective "dependents of dependents," she asserts nonetheless that these are proper damages here and that decedent's illegitimate children are denied equal protection because they will later be strapped with support responsibilities for their ailing mother.
This theory misconstrues the Wrongful Death Act and the damages made available through the statute. The measure of damages under the Wrongful Death Act is the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." Dubil v. Labate, 52 N.J. 255, 259 (1968) (quoting McStay v. Przychocki, 7 N.J. 456, 460 (1951)). In Dubil, the Supreme Court expressly stated that the amount of that recovery is unrelated to the survivor's needs:

The amount of the recovery under this standard is based upon the contributions, reducible to monetary terms, which the decedent reasonably might have been expected to make to the survivors, and is not related to their needs. [52 N.J. at 259; emphasis supplied]
Accord Tenore v. Nu Car Carriers, 67 N.J. 466, 473 (1975).
Thus, in terms of what survivors are entitled to recover, there is no denial of "equal protection" here. Barbara Sykes' argument is based exclusively on the asserted future "needs" of decedent's illegitimate children to provide care and support for their ailing mother. Yet these asserted "needs" of survivors are as unavailable to legitimate children as they would be to *470 illegitimate children. In short, both classes of children are treated equally under the Wrongful Death Act, Schmoll v. Creecy, supra, to the extent that both classes are barred from asserting such "needs" as the foundation for entitlement to statutory damages. Both may equally seek recovery for "loss of pecuniary advantage" but those damages bear no relationship to eventual or future financial responsibilities they may incur for their own dependents.
There is no denial of "equal protection" under the Wrongful Death Act.
The purpose of the Wrongful Death Act, N.J.S.A. 2A:31-1 et seq., is to provide for those dependent on the deceased at the time of his or her death. N.J.S.A. 2A:31-4. "Being remedial in nature, the statute is to be liberally construed and applied to effectuate its beneficent object." Turon v. J. & L. Construction Co., 8 N.J. 543, 558 (1952). Nonetheless, our courts have been reluctant to extend recovery beyond those individuals clearly intended to be its beneficiaries. Ibid.; State v. Gosnell, 106 N.J. Super. 279 (App.Div. 1969).
The new act governing administration of estates and intestacy has continued to use the words "surviving spouse." N.J.S.A. 3B:5-3, effective May 1, 1982.
A "spouse" is a man or woman joined in wedlock, a married person. Lopez v. Santiago, 125 N.J. Super. 268 (App.Div. 1973).
A wife-in-fact is not an "heir" of decedent. Newburgh v. Arrigo, 88 N.J. 529, 540 (1982). Justice Pashman would expand the statutory definition of heirs-at-law to include one who was a wife-in-fact, although not legally married to a decedent, relying on Dawson v. Hatfield Wire & Cable Co., 59 N.J. 190 (1971). He believed that recovery should be allowed under the Wrongful Death Act for a de facto spouse when a technical defect may have invalidated a seemingly legitimate marriage. 88 N.J. at 547.
*471 It is not the function of a trial court to create an exception to an established rule of law; that is the function of either the Supreme Court or the Legislature. While the trial court need not necessarily agree with the appellate tribunals, it may not disregard them. Lewandowski v. Nat'l Grange Mutual Ins. Co., 149 N.J. Super. 591 (Law Div. 1977).
Therefore, this court cannot create an exception to a rule established by the Supreme Court.
In the instant case, plaintiff Barbara Sykes lacks the necessary prerequisites to claims for either loss of consortium or wrongful death damages. Her consortium claim fails for want of a marriage relation. Her death claim falls outside any applicable classification under the controlling statutes. Barbara Sykes was never decedent's spouse and, for whatever reasons, their relationship was never formalized through a marriage ceremony.
Therefore, this court dismisses any and all claims of plaintiff, Barbara Sykes, individually or in her own behalf asserted in this action.
NOTES
[1] Defendant, Zook Enterprises, Inc., has not joined in this motion.
[2] In Bulloch v. U.S., 487 F. Supp. 1078 (D.N.J. 1980), a New Jersey federal district court held that the right to recover for loss of consortium should be extended to one who had intended to resume cohabitation with the injured party after having been previously married to and divorced from the injured party. This was an admittedly novel ruling, in what Judge Ackerman characterized as "a case of first impression." Id. at 1080. His learned effort to predict what a New Jersey state court would do in the circumstances, however, was definitively rejected when the Appellate Division later addressed that question. Leonardis, supra.
[3] Third parties have standing to raise the constitutional rights of others in a challenge to statutory differentials so long as they show requisite injury-in-fact. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), reh'g. den. 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977).