Dale SMITH and Susan Marsh, Plaintiffs,

v.

BELL SPORTS, INC., John Doe Corporations I Through X, fictitious distributors and/or component parts manufacturers whose names are presently unknown, Defendants.

Nos. 95–CV–6569L, 96–CV–6091L.

United States District Court, W.D. New York.

Aug. 8, 1996.

William D. Sanders, David J. Novack, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, for plaintiffs.

Joseph D. Giacoia, Capuder & Arnoff, P.C., New York City, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This action arises from plaintiff Dale Smith's injury in an auto race at Watkins Glen on July 21, 1991, allegedly caused by a defective helmet manufactured by Bell Sports, Inc. ("Bell"). On July 20, 1994—the last day of the limitations period for their negligence and product liability causes of action—Dale Smith and Susan Marsh filed a complaint in the Western District of New York.[1] However, they failed to serve Bell until over eight months later and Bell moved to dismiss the complaint under Fed.R.Civ.P. 4(m). On September 8, 1995, this Court granted Bell's motion and the action was dismissed.

On November 13, 1995, plaintiffs refiled their complaint in the Western District of New York and simultaneously filed an identical complaint in New York State Supreme Court (King's County). Both complaints allege the same causes of action set forth in their original complaint. On December 18, 1995, Bell removed the state court action to the United States District Court for the Eastern District of New York. Upon joint motion of the parties, the Eastern District action was transferred to this Court.

Bell now moves to dismiss both actions pending before this Court based on the statute of limitations. In the alternative, Bell contends that under the controlling law (which they argue is New York), Ms. Marsh's loss of consortium and negligent infliction of emotional distress claims must be dismissed because they are not legally cognizable. They also argue that at the very least, one of the actions now pending before you must be dismissed as duplicative.

Plaintiffs' contend that their actions are timely under New York's saving statutes CPLR § 306–b(b) and U.C.C. § 2–725(3), which must be applied by a federal court sitting in diversity. They further argue that under New York choice of law rules, New Jersey has the greater interest in this case and that Ms. Marsh's loss of consortium and negligent infliction of emotional distress claims are viable under New Jersey law.

### Bell's Motions To Dismiss

### I. The Timeliness of Plaintiffs' Claims.

It is clear that plaintiffs' second complaint—filed on November 13, 1995—is untimely unless the filing is protected by New York savings statutes. Plaintiffs contend that the subsequent complaint, filed after this Court's prior dismissal, was timely filed pursuant to two New York statutes, CPLR § 306–b(b) and U.C.C. § 2–725(3).

The first issue then is whether these New York statutes apply at all in this federal court action. And, even if the statutes apply generally, the second issue is whether plaintiffs have met the particular requirements of either of these savings statutes.

### A. The Applicability of the New York Savings Statutes

 Bell contends, in essence, that in this action in federal court only Rule 4(m) applies and no New York statutes are applicable since a dismissal under rule 4(m) has "the effect of negating the fact that a complaint was ever filed." *Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir.1989). In Bell's view,

---

1. The complaint set forth causes of action for negligence, strict products liability and breach of warranty, and claims by Ms. Marsh for loss of consortium and negligent infliction of emotional distress.

only the filing date of the second complaint is relevant. Since that date was well after the limitations period expired, in Bell's view, the action must be dismissed.

■ If this action pleaded only federal causes of action, Bell's contention might have merit. This is, however, a diversity action and under such circumstances this Court sits and operates as if it were a state court and must apply state substantive law. Under controlling United States Supreme Court and Second Circuit authority, it is clear that this principle applies as well to state statute of limitation issues, including service and tolling provisions.

■ It is well-established that "state statutes of limitations govern the timeliness of state law claims under federal diversity jurisdiction." *Personis v. Oiler,* 889 F.2d 424, 426 (2d Cir.1989) (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). "State law also determines the related questions of what events serve to commence an action and to toll the statute of limitations in such cases." *Id.* (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). In *Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986, the Supreme Court held that federal courts sitting in diversity were required to apply state service requirements that were considered an "integral part of the state statute of limitations." *See also West v. Conrail,* 481 U.S. 35, 39 n. 4, 107 S.Ct. 1538, 1541 n. 4, 95 L.Ed.2d 32 (1987) (explaining that:

( [w]hen the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period. (Citation omitted.) Respect for the State's substantive decision that actual service is a component of the policies underlying the statute of limitations requires that the service rule in a diversity suit 'be considered part and parcel of the statute of limitations.'

(quoting *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986)).

In *Personis,* 889 F.2d at 426–27, the Second Circuit was asked to decide whether a New York statute that allowed a sixty-day extension of the statute of limitations by delivering a summons to a state official and having the summons served within that sixty-day period should be applied to a federal court diversity action. The court concluded that it should, stating that:

[b]y making the length of the limitations period depend on the manner in which a plaintiff attempts to effect service, section 203(b)(5) constitutes an 'integral part' of New York's statute of limitations. Since federal law neither offers an alternate method of obtaining the statutory extension nor states a conflicting rule of procedure implicitly prohibiting the availability of the statute in diversity suits, federal courts may give a state service provision like section 203(b)(5) full legal effect.

*Id.*

In *Diffley v. Allied–Signal, Inc.,* 921 F.2d 421, 423 (2d Cir.1990), the Second Circuit held that a New York savings statute similar to one of the provisions at issue here applied to revive the plaintiffs' claims in a diversity action. In *Diffley,* the New York plaintiffs' original suit was dismissed for lack of diversity after it was learned that one of the putative foreign corporations was, in fact, a New York corporation. Prior to the dismissal, the New York corporation merged into a Delaware corporation. However, the district court refused to allow the plaintiffs to amend their complaint to redesignate the defendant corporation based on the then-existing diversity of citizenship. The statute of limitations expired. *Id.* at 422–23.

The plaintiffs then refiled their action in reliance on the state savings provision, CPLR § 205(a). The defendants argued that the complaint was time-barred and that CPLR § 205(a), should not be applied. The district court agreed. *Id.* at 423.

In reversing, the *Diffley* court noted that the application of section 205(a)

neither affects nor circumvents the dismissal of the prior action; ... it does not conflict with federal procedure; and it does not expand the district court's jurisdiction. Instead, § 205(a) merely extends the peri-

od for filing a claim, and if New York's courts would apply it to this case, then we also are bound to apply it.

*Id.* at 424.

Finally, in *Wilder v. Budget Rent A Car,* 1995 WL 322138 (S.D.N.Y.1995), the Southern District of New York applied one of the savings provisions at issue here, CPLR § 306–b(b) to revive a diversity plaintiff's personal injury cause of action. *Wilder v. Budget Rent A Car,* 1995 WL 322138 (S.D.N.Y.1995). So confident was the *Wilder* court that section 306–b(b) applied, that its written opinion contains no discussion of the constitutional analysis generally employed by courts in determining the applicability of state statutes in diversity cases. The court simply states that "[n]othing in the language of Section 306–b(b) limits its applicability to the state court system, and it can reasonably be inferred that dismissal in any court for failure to effect proper service triggers the right to commence a new action." *Id.* at *2.

Thus, it seems clear that savings provisions such as those at issue here are considered an "integral part" of state substantive law regarding the statute of limitations, and as such, must be applied by a federal court sitting in diversity.

## B. The Operation of the Savings Statutes

Having determined that New York savings statutes have general applicability in the instant case, I must determine whether plaintiffs meet the various requirements of these statutes.

### I. CPLR Section 306–b(b)

Section 306–b provides, in relevant part:

(a) Proof of service of the summons and complaint, ... shall be filed with the clerk of the court within one hundred twenty days after the date of filing of the summons and complaint ... provided that in an action or proceeding where the applicable statute of limitations is four months or less, such proof of service must be filed not later than fifteen days after the date on which the applicable statute of limitations expires. If proof of service is not filed and there has been no appearance by the defendant within the time provided in this section for filing proof of service, the action ... shall be deemed dismissed as to the non-appearing party with respect to whom no proof of service has been filed, without prejudice....

(b) If an action dismissed for failure to file proof of service pursuant to this section or for failure to effect proper service was timely commenced, the plaintiff may commence a new action, despite the expiration of the statute of limitations after the commencement of the original action, upon the same transaction or occurrence or series of transactions or occurrences within one hundred twenty days of such dismissal provided that service upon the defendant is effected within such one hundred twenty day period....

▪ Plaintiffs' original complaint was filed on the last day of the limitations period, July 20, 1994. Thus, the action was "timely commenced," within the meaning of section 306–b(b).[2] On September 8, 1995—more than 120 days after the commencement of the action—the complaint was dismissed by this Court, on motion, for failure to timely serve Bell. Plaintiffs' second complaint was refiled in this Court on November 13, 1995, well within the second 120–day period prescribed by section 306–b(b). Accordingly, plaintiffs contend that the second complaint was timely filed for purposes of the statute of limitations.

Bell contends that plaintiffs' interpretation of the statute is flawed. Bell argues that under § 306–b(a), had plaintiffs filed their original action in state court, their failure to serve Bell and file their proof of service within the 120 days prescribed by subsection (a) would have resulted in the *automatic* dismissal of their action. *See Barsalow v. City of Troy,* 208 A.D.2d 1144, 617 N.Y.S.2d 594 (3rd Dep't 1994) (dismissal for failure to

**2.** In 1992, the New York Legislature changed the method of commencing an action in the New York courts. Under CPLR § 304, an action is commenced upon the filing of a summons and complaint with the clerk of the court. Prior to this amendment, an action was commenced upon the service of the complaint.

file proof of service within time limits set forth in § 306–b(a) is automatic and later issued trial court order purporting to effectuate the dismissal was superfluous). Then, under subsection (b), plaintiffs would have had an additional 120 days from the date of the automatic dismissal within which to initiate another action and serve Bell in order to preserve their claims in state court.

Bell contends that such an analysis is required here. It claims that since plaintiffs failed to refile their complaint within 240 days of filing the *original* complaint, they have failed to meet the requirements of § 306–b and therefore the claims are time-barred. In essence, Bell claims that although there is no "automatic" dismissal provision in federal procedure, nonetheless, this Court should analyze the limitations issue as if there were such an automatic dismissal procedure. Under this interpretation, plaintiff has only 240 days from the original date of filing within which to refile the complaint in order to be protected under the saving provisions of § 306–b.

I am not persuaded by this argument. I believe that plaintiffs' complaint here is "saved" by § 306–b because it was filed within 120 days after this Court's dismissal of the first complaint. To hold otherwise would defeat the purpose of the state saving statutes under these circumstances. Under Bell's logic, many plaintiffs could be prevented from obtaining the benefit of the state's saving statutes in diversity actions if it happened that the district court delayed dismissing the first action for a period in excess of 240 days after the initial filing. To interpret § 306–b in this fashion, in this diversity, action would work a grave injustice on plaintiffs.

■ There is clearly a conflict between federal procedure and state procedure as to *how* an action is dismissed for failure to serve the initial complaint. State procedure provides for an "automatic" dismissal after 120 days have elapsed from the initial filing. But, no such dismissal is contemplated by federal procedure. The federal procedure rule at issue, Rule 4(m), requires a motion, or an action by the court, on notice to plaintiff of the application for a dismissal. The dis-

missal, if granted, is only effective upon the entry of such an order by the court. That procedure is precisely what occurred in the instant case.

In my view, federal not state law should control concerning the effective date of dismissal of the first complaint. In the instant case, while it is clear that section 306–b provides the substantive law regarding service and the tolling of the state statute of limitations, *see West,* 481 U.S. at 39 n. 4, 107 S.Ct. at 1541 n. 4; *Diffley,* 921 F.2d at 424, it seems equally clear that Rule 4 governs the procedural requirements for service in federal court. *See Morse v. Elmira Country Club,* 752 F.2d 35, 38 (2d Cir.1984) (in a diversity case, running of statute of limitations was governed by New York law requiring service, but federal rules specified method of effecting service). In addition to regulating the method and timing of service of process, Rule 4, under subsection (m), provides the procedure for extending the time for service. *See Argentina v. Emery World Wide Delivery Corp.,* 167 F.R.D. 359 (E.D.N.Y.1996) (section 306–b, the state service statute, governs tolling of the statute of limitations, but Rule 4(m) governs the procedure for extending the time for service). More importantly, for purposes of this case, Rule 4(m) provides the mechanism for accomplishing the dismissal of the action for failure to timely serve. *See* Rule 4(m) (where service untimely, action may be dismissed on motion by defendant or upon notice by court).

Rule 4(m) does not purport to change the method for tolling the statute of limitations, nor does it define when an action is commenced. Rule 4(m) simply provides a time-limit for service, a method for extending the service period, and a mechanism for dismissal if service is found to be untimely. Because it affects only the process of enforcing substantive rights and does not alter the underlying law, Rule 4(m) is inherently procedural in nature. Accordingly, both constitutional and statutory concerns are satisfied, and Rule 4(m) is controlling. *See Morse,* 752 F.2d at 38; *Argentina,* 167 F.R.D. at 363.

In sum, this Court concludes that Rule 4(m) provides the sole procedure for accom-

plishing a dismissal for failure to timely serve the complaint. The original complaint in this case was dismissed pursuant to Rule 4(m) on September 8, 1995. Since Plaintiffs refiled their action in this Court (and in state court) on November 13, 1995, well-within the 120 period afforded by section 306–b(b), their actions were timely filed for purposes of the statute of limitations.[3]

## II. Marsh's Derivative Claims

### A. Choice of Law

In determining the viability of plaintiff Susan Marsh's ("Marsh") negligent infliction of emotional distress and loss of consortium claims, the first issue this Court must address is the choice of law. Marsh contends the law of the state in which she is domiciled, New Jersey, should apply. Bell argues in favor of the law of the site of the accident, New York. A choice of law analysis is necessary here because the viability of Marsh's state law claims turns on which state's law is controlling. As more fully discussed *infra*, Marsh's loss of consortium claim is barred under both New York and New Jersey law because she and plaintiff Smith are not married. *See Consorti v. Owens–Corning Fiberglas Corp.*, 86 N.Y.2d 449, 451, 634 N.Y.S.2d 18, 657 N.E.2d 1301 (1995); *Lesocovich v. Madison Ave. Corp.*, 165 A.D.2d 963, 561 N.Y.S.2d 851 (3rd Dep't 1990); *app. denied*, 77 N.Y.2d 804, 568 N.Y.S.2d 912, 571 N.E.2d 82 (1991); *Leonardis v. Morton Chem. Co.*, 184 N.J.Super. 10, 445 A.2d 45 (App.Div.1982). Her claim for negligent infliction of emotional distress is barred under New York law because she was not in the "zone of danger." *See Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984). However, it may be viable under New Jersey law since New Jersey has abandoned the more restrictive "zone of danger" test. *See Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980). Accordingly, this Court must determine which law is applicable here.

It is well-settled that in a diversity action, the district court is bound by the choice-of-law rules of the forum state. *Klaxon Co. v.*

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The seminal case in this area is *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), in which the New York Court of Appeals set forth general rules to be employed in choice-of-law analyses. *See Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 963 (2d Cir.1991) (Neumeier analysis applicable "to all post-accident loss distribution rules . . .") (original emphasis).

■ Under *Neumeier*, this Court must "consider the following three elements: the domicile of the plaintiff; the domicile of the defendant; and the place of the accident. When more than one of these is located in the same state, that state's law should ordinarily control." *Datskow v. Teledyne Continental Motors Aircraft Products*, 807 F.Supp. 941, 943 (W.D.N.Y.1992).

When, as in the instant case, the parties are each domiciled in different states and the accident occurred in yet a third state, "the rule is necessarily less categorical." *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

> Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Id.; see also Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (rejecting mechanical place of injury rule and giving controlling effect to the law of the state with the greatest interest in the specific issue raised).

■ The instant case involves this so-called third *Neumeier* scenario: the accident occurred in New York, the plaintiff resides in New Jersey, and the defendant is incorporated in California and has its principal place of business in Illinois. Accordingly, this Court is not bound to apply the law of the site of

---

**3.** In light of the Court's conclusion that section 306–b "saves" Plaintiffs various causes of action, it is unnecessary to reach the issue of the applicability of the second savings statute, U.C.C. section 2–725(3).

the accident, New York, and may apply the law of New Jersey, the state that I believe has the greater interest here, if to do so "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *See id.*

As this Court explained in *Datskow,* 807 F.Supp. at 944, which also involved the third *Neumeier* scenario, "[a]lthough the location of the accident is usually a major consideration, under the facts of this case its significance is relatively minor." New York's primary concern here is in regulating the conduct within its borders; in the instant case in insuring, at least as much as possible, the safety of racing participants and spectators alike. Its interest in seeing that Marsh, a non-domiciliary, is compensated for any harm caused by the allegedly wrongful conduct is minimal at best. *See Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) (where conflicting laws involve loss allocation, state where accident occurred has little interest "in determining the right of recovery or the extent of the remedy").

Further, although the accident occurred in New York, the allegedly tortious conduct— the defective design and manufacture of the helmet—did not. The helmet was designed and manufactured outside New York state (presumably in Illinois, Bell's principal place of business). Thus, since New York is neither the domicile of either party nor is it the site of the alleged tort, "[t]here is little reason, then, why this action should be governed by the law of [New York], other than 'the purely adventitious circumstance that the accident occurred there.'" *See Datskow,* 807 F.Supp. at 944, quoting *Babcock v. Jackson,* 12 N.Y.2d at 482, 240 N.Y.S.2d 743, 191 N.E.2d 279.

In contrast, it is beyond question that New Jersey's interest is paramount with regard to the right of recovery of its citizens. Although not legally married, the plaintiffs here lived together as a family in New Jersey for over fourteen years. It is for New Jersey to decide whether the relationship between the plaintiffs, both New Jersey resi-

dents, is sufficient to warrant recovery for the harm allegedly caused by Bell. Accordingly, I find that the application of New Jersey law here "would further that State's interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of that State's loss-distribution tort rules," and that New York "has no significant interest in applying its own law to this dispute." *See Schultz,* 65 N.Y.2d at 202, 491 N.Y.S.2d 90, 480 N.E.2d 679.

## B. Marsh's Claim for Negligent Infliction of Emotional Distress

■ Having determined that New Jersey law is controlling here, the issue presented is whether Marsh, a bystander, has stated a viable cause of action for emotional distress under New Jersey law. I believe that at least at this stage, on a motion to dismiss, plaintiff Marsh has sufficiently pleaded this cause of action.

In *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980), the New Jersey Supreme Court rejected the rigid "zone of danger" test in favor of a more flexible analysis. The court held that a bystander could recover for the negligent infliction of emotional distress upon proof of four elements:

> (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.

*Id.* at 101, 417 A.2d at 528.

More recently, the New Jersey Supreme Court extended bystander recovery to non-married cohabitants. *Dunphy v. Gregor,* 136 N.J. 99, 642 A.2d 372 (1994). The court explained that " '[G]iven the widespread reality and acceptance of unmarried cohabitation, a reasonable person would not find the plaintiff's emotional trauma to be "remote and unexpected." ' " *Id.* at 110, 642 A.2d at 377, quoting *Elden v. Sheldon,* 46 Cal.3d 267, 250 Cal.Rptr. 254, 263, 758 P.2d 582, 591 (1988) (Broussard, J., dissenting) (citation omitted). The *Dunphy* court concluded that "[t]he State's interest in marriage would not be

harmed if unmarried cohabitants are permitted to prove on a case-by-case basis that they enjoy a steadfast relationship that is equivalent to a legal marriage and thus equally deserves legal protection." *Dunphy,* at 114, 642 A.2d at 379.

In the instant case, Marsh alleges that "she has been the continuous companion and friend of Dale Smith for the past 14 years, having cohabitated together for almost this entire period of time, [and that] [d]uring this period, their relationship has been as close and personal as is humanly possible." (Complaint (Civil Action No. 95–CV–6569) ¶¶ 42–43.) She further contends that she was present at the raceway at the time of the accident; that "[s]he was aware of the accident in which Dale Smith was involved and witnessed many of the events attendant thereto;" and that "[s]ubsequent to the accident . . . [she] was with Dale Smith in the hospital and she continues to witness the pain and suffering which he endured as a direct and proximate result of he conduct of the defendants." (Complaint (Civil Action No. 95–CV–6569) ¶¶ 44–46.) Finally, she alleges that she suffered "severe emotional harm" as a result of witnessing the above-described events.

Bell contends that Marsh's claim fails because she did not contemporaneously observe the accident in which Smith was injured. However, observation of the accident is not the critical factor here. Rather, it is the observation of Smith's injury at the scene of the accident that Marsh must plead and prove. *See Portee v. Jaffee,* 84 N.J. at 101, 417 A.2d at 528. In *Portee,* the plaintiff did not see the elevator doors close on her son and did not see him dragged up the elevator shaft. She arrived "[s]oon afterwards," and watched helplessly as efforts were made to extract him. *Id.* at 91, 417 A.2d at 522. Thus, the issue here is not whether Marsh observed the crash, but whether she arrived on the scene nearly contemporaneously and observed Smith's resulting injuries. While recovery on this cause of action is certainly not guaranteed and while there may be proximate cause issues as well, it cannot be said at this stage that Marsh can prove no set of facts that would entitle her to relief. *See*

*Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). Accordingly, Bell's motion to dismiss Marsh's cause of action for negligent infliction of emotional distress is denied.

**C. Marsh's Claim for Loss of Consortium**

■ By the fifth cause of action set forth in the complaint Marsh seeks to recover for her loss of consortium as a result of Smith's allegedly negligently caused injuries. However, under New Jersey law, a valid marriage is a prerequisite for a loss of consortium claim. *See Leonardis v. Morton Chemical Co.,* 184 N.J.Super. 10, 445 A.2d 45 (App.Div. 1982). Marsh and Smith are not married, nor were they married at the time of the accident.

Marsh nevertheless contends that the district court's decision in *Bulloch v. United States,* 487 F.Supp. 1078 (D.N.J.1980), demonstrates that the law in this area is in a state of flux and that "[t]his Court must look to the changing mores of society and trends in New Jersey law in order to view the claim of the pleader in the most favorable light and give the plaintiff the benefit of all inferences that may be drawn." (Plaintiffs' Brief in Opposition to Bell Sport's Motion to Dismiss, at p. 30.) In *Bulloch,* the district court allowed recovery for loss of consortium to a plaintiff who, having previously been married and divorced from the injured party, intended to resume living with that party. *Id.* In so holding, the *Bulloch* court noted that "marriage is not the sacrosanct institution that it once was and that extra-marital relations are not the anathema they once were." *Id.* at 1080.

However, subsequent New Jersey courts have expressly declined to follow *Bulloch. See, e.g., Leonardis v. Morton Chemical Co.,* 184 N.J.Super. at 11, 445 A.2d at 45; *Sykes v. Zook Enterprises, Inc.,* 215 N.J.Super. 461, 521 A.2d 1380 (Law Div.1987); *see also Schroeder v. Boeing Commercial,* 712 F.Supp. 39 (D.N.J.1989). In *Leonardis,* the court explained that:

The right of recovery for loss of consortium resulting to a wife by reason of an

injury to her husband, is founded upon the marriage relation. Absent such relationship, the right does not exist, and thus no recovery may be had for loss thereof. We find no merit in and decline to follow *Bulloch v. U.S.*, 487 F.Supp. 1078 (D.N.J. 1980). Accordingly, the right to recovery for loss of consortium does not inhere in a woman not married to her male consort who is injured.

184 N.J.Super. at 11, 445 A.2d at 45 (citations omitted).

Given the express rejection of *Bulloch* by the New Jersey appellate court, there is little doubt that marriage remains a prerequisite to recovery for loss of consortium in New Jersey. Accordingly, Marsh's loss of consortium claim fails as a matter of law, and Bell's motion to dismiss this cause of action is granted.

## CONCLUSION

For the reasons set forth above, Bell's motion to dismiss Plaintiffs' complaint, Civil Action No. 95–CV–6569 is denied, with the exception that Marsh's claim for loss of consortium is dismissed as not legally cognizable. Plaintiffs' second complaint, Civil Action No. 96–CV–6091L is dismissed as duplicative.

IT IS SO ORDERED.